QUARTUS ELY, and ENOCH L. ROBERTS, Plaintiffs in Error, *v.* MARTIN EASTWOOD, and MARY EASTWOOD, Defendants in Error.

### ERROR TO LEE.

A sale under a trust deed executed prior to the passage of the law of 1857, does not come within the provisions of the Homestead Exemption Act.

DEFENDANTS in error, on the fourth of February, 1860, filed their bill in the Lee Circuit Court against plaintiff in error, Ely, alleging that, on the fourteenth day of January, 1857, defendants in error made their promissory note, payable to Quartus Ely, twelve months after date thereof, for the sum of six hundred and thirty-three dollars, for an indebtedness from said Martin Eastwood to said Ely ; that to secure the payment of said note, they, at the time of making the same, executed and delivered to said Ely, an instrument purporting to be a deed of trust, a copy of which is attached to the bill, substantially as follows :

" Whereas Martin Eastwood, and Mary his wife, party of the first part, of the county of Lee and State of Illinois, have executed their one certain promissory note of even date herewith, payable to Quartus Ely or order, twelve months after the date thereof, for the full sum of six hundred and thirty-three dollars :

Now, therefore, the said Martin Eastwood, and Mary his wife, party of the first part, to secure the payment of said note according to its tenor and effect, in consideration of one dollar, and the further sum of six hundred and thirty-three dollars, the receipt whereof is confessed, doth grant, bargain and sell unto Quartus Ely, of the county of Lee, and State of Illinois, his

heirs and assigns, forever, the premises described as follows: (here follows description of premises in question), situated in the county of Lee, and State of Illinois, together with all and singular the privileges and appurtenances thereunto belonging. In trust, nevertheless, that in case default be made in the payment of said note, or any part thereof, according to the tenor and effect of said note, then, on the application of the legal holder of said note, the said Quartus Ely, after publishing a notice in a newspaper printed in the said county of Lee, ten days before the day of such sale, to sell the said premises, and all right and equity of redemption of the said Martin Eastwood and Mary his wife, party of the first part, their heirs and assigns, therein, at public auction at the court house door, in said county of Lee, to the highest bidder for cash, at the time mentioned in such notice. And to make, execute and deliver to the purchaser or purchasers thereof a deed or deeds for the premises so sold, and out of the proceeds of such sale to pay all costs and expenses incurred in advertising and selling said premises, also the principal and interest due on said note.

And the said Martin Eastwood and Mary his wife, party of the first part, for themselves, their heirs, executors and administrators, covenant with the said Quartus Ely, that they are well seized of said premises in fee simple, and that they have good right and full power to grant, bargain and sell the same in form aforesaid, that the same are free from all incumbrance, and that they will, and their heirs, executors and administrators shall forever warrant and defend the same against the lawful claim of all persons.

Signed and sealed, etc.

That at the time of signing the deed, a certificate of acknowledgment was thereto attached, in the words and figures following, to wit:

" STATE OF ILLINOIS, LEE COUNTY, ss.

" I, Samuel C. Eells, Notary Public in and for said county, in the State aforesaid, do hereby [certify] that Martin Eastwood, and Mary his wife, who is personally known to me as the same person whose name is subscribed to the within trust deed, as having executed the same, appeared before me this day in person, and acknowledged that they signed, sealed and delivered the said instrument of writing as their free and voluntary act, for the uses and purposes therein set forth. And the said Mary Eastwood, wife of the said Martin Eastwood, having been by me examined, separate and apart, and out of the hearing of her husband, and the contents and meaning of the said trust deed having been by me made known and fully explained to her, acknowledged that she had freely and voluntarily executed the

same, and relinquished her dower to the lands and tenements therein mentioned, without compulsion of her said husband, and that she does not wish to retract the same.

" Given under my hand and notarial seal, this 14th day of January, A. D. 1857.

SAMUEL C. EELS."

That Ely procured the same to be recorded in the recorder's office of the county of Lee, on the fifteenth day of January, A. D. 1857. That by the terms of said deed, in default in the payment of said note, Ely was authorized to sell the real estate therein described, to the highest bidder for cash, after having given notice, etc.

That on the twenty-eighth day of September, 1858, Ely induced defendants in error to appear before one Platt Townsend, a justice of the peace for Lee county, and make acknowledgment of the execution of the deed at that time, which they accordingly did ; and the said Townsend then and there attached to the said deed of trust a certificate, of which the following is a copy :

"STATE OF ILLINOIS, LEE COUNTY, *ss.*

" On this 28th day of September, 1858, before me, Platt Townsend, a Justice of the Peace, personally appeared Martin Eastwood and Mary Eastwood, to me personally known to be the real persons whose names are affixed to the foregoing deed of conveyance, and acknowledged that they executed the same for the purposes therein mentioned. And the said Mary Eastwood, on examination apart from her said husband, and having had the contents of the foregoing deed fully explained to her by me, acknowledged that she executed the same freely and voluntarily, and without force or compulsion of her said husband, and that she does not wish to retract the same.

" In witness whereof, I have hereunto set my hand and seal, the day and year first above written.

PLATT TOWNSEND, [SEAL.]<br>*Justice of the Peace.*"

That Ely, also on that day, procured Eells to attach his notarial seal to the certificate of acknowledgment, by him attached to said deed, which Eells had not done before that time ; and that Ely thereupon procured said deed, together with the several certificates of acknowledgment thereof, to be again recorded, etc.

That at the date of said deed, and for a long time prior thereto, and up to the said 28th day of September, 1858, the whole of the real estate mentioned and described in said deed of trust, was the property of the defendant in error, Mary Eastwood ; that at the date of said deed, the said Martin Eastwood was,

and from thence has been, a householder, having a family, for which he provides; that the whole of the premises lie together in one tract, having a dwelling house situated upon the same, in which the said Eastwood, together with his family, resided at the time of the making of the deed, and have continued to reside thereon; that the debt, to secure which said deed was executed, was not incurred for the purchase price or improvement of said premises; that defendants in error have never executed any release or waiver of the rights of either of them to said premises as a homestead.

That Ely had advertised the premises for sale, under the power in said trust deed contained, such sale to take place on the 7th day of February, 1860, and that unless restrained, Ely was about to sell the premises accordingly.

The bill prays that Ely may answer under oath, etc. And that he might be enjoined from all proceedings, under and by virtue of said deed of trust; and prays for general relief.

Ely filed his answer to said bill, which, as subsequently amended, is as follows:

Saving and reserving, etc., admits that defendants in error made and executed their certain promissory note as alleged in said bill, drawing interest however at the rate of ten per cent. per annum after maturity; admits that defendants in error at the same time executed and delivered the said trust deed to secure the payment of said note. Admits that the copy of the certificate of acknowledgment set out in said bill, made on the 14th of January, 1857, is correct, with the exception that the word "certify" is omitted in such copy, and with the further exception that an impression of the notarial seal of the said notary public before whom such acknowledgment was taken, was attached to the original certificate at the time the same was made. Admits that he procured said deed to be recorded, as alleged in said bill; and that by the terms of said deed, in default of the payment of said note, he was authorized to advertise and sell said premises as alleged in said bill.

Avers the truth to be that it was the expressed intention, object and purpose of said defendants in error at the time of making said deed, as well as of himself, the said Ely, that the defendants in error should convey to the said Ely all and singular the estate, right and interest as well of the said Martin as of the said Mary, in and to the said premises in said trust deed described, for the purposes in said deed expressed, viz., to secure the payment of said note. Admits that after the said deed had been made, the said Martin Eastwood applied to the said Ely, to procure him to transfer the said note to Messrs. Kendall and Eggleston, in order that the said Martin Eastwood might,

through some arrangement between himself and the said Kendall and Eggleston, obtain further time for the payment of said note; that thereupon doubts arose as to whether said certificate of acknowledgment so attached to said deed at the time of making thereof, was sufficient to convey the portion of the said lands, the title to which was vested in the said Mary Eastwood, wife of said Martin; and it being the original agreement that the said Ely should have conveyed to him the interest in the said estate of the said Mary Eastwood as well as of the said Martin, the defendants in error did agree with said Ely, to make, and did in fact make, such additional acknowledgment of said deed as alleged in said bill.

Denies that he procured said notary, who attached the original certificate of acknowledgment to said deed, to affix his notarial seal to said certificate, as alleged in said bill, but avers that the same was done at the time said certificate of acknowledgment was made by said notary public on the 14th of January, 1857; admits that he procured said deed, together with its several acknowledgments, to be again recorded, as alleged in said bill.

Admits that at the time of the making of said deed, the title to the said north-east quarter of the south-west quarter of said section 27, being a part of said premises, was in the said Mary Eastwood, except so far as the said Martin had rights therein, arising from the fact of his then being the husband of the said Mary; but denies that the said Mary was the owner of the remaining portion of said premises, viz., that portion of the west half of the south-west quarter of said section, which lies north of the road leading from Dixon to Lee Centre, containing 57 66-100 acres; and, on the contrary thereof, avers that the title to the last mentioned tract was, at the time of the execution of said deed, in the said Martin, and that the only pretense of title that the said Mary had to the same, was derived through a deed executed to her, the said Mary, by the said Martin, during the period of their said relation of husband and wife.

Admits that the said Martin Eastwood was a householder and with his family resided on said premises, as alleged in said bill; that the debt to secure the payment of which said trust deed was given, was not incurred for the purchase money of said premises, but whether for the improvement thereof he knows not.

Admits that the defendants in error have not executed to him any waiver or release of any rights in said premises except as appears by said deed of trust, but avers that it was the agreement and understanding of the parties at the time said deed was made, that all the rights and interests of the said defend

ants in error, in and to said premises, were to be conveyed to the said Ely for the purposes in said deed expressed. Admits that he advertised said premises for sale, and was about to sell the same, under and by virtue of the power in said trust deed contained, for the purpose of satisfying the portion of said note then unpaid; avers that the said Martin Eastwood, on or about the 9th of November, 1857, paid upon the said note the sum of $250, which was duly indorsed thereon.

Avers that at the instance of said Martin Eastwood as aforesaid, on or about the 28th of September, 1858, he sold and assigned said note to said Messrs. Kendall and Eggleston, who paid him therefor the full amount then remaining due and unpaid thereon, after deducting said payment of $250; and that, as he has since been informed and believes, the said Kendall and Eggleston afterwards transferred said note to Enoch L. Roberts, who owns the same; that upon the application of said Roberts, said Ely proceeded to execute the power in said trust deed contained, in the manner aforesaid, as he of right and in equity ought to do.

Denies all unlawful combination, etc., and submits that there is no equity upon the face of the bill, and prays the same benefit of such defense as if he had demurred thereto; which said answer was duly sworn to by said Ely.

On the 14th of February, 1860, defendants in error filed their supplemental bill, whereby, after stating the prayer of their original bill, they aver, after the filing of the said original bill, and before any further proceedings were had in said cause, on the 7th day of February, 1860, the said Ely proceeded to sell the said premises, and did sell the same to said Enoch L. Roberts, who was alleged in the answer of said Ely, to be the owner of said note, by virtue of the said pretended trust deed, for the sum of $460, and that said Ely thereupon executed a deed of said premises to said Roberts. Defendants in error claim the same relief against Roberts as they would have been entitled to against said Ely, had he not sold said premises, and pray that the said Roberts may be made defendant, and required to answer the said bills of complaint upon his corporal oath, etc., and that they may have the full benefit of the suit against Roberts, and the same relief as they might or could have had against the said Ely; and that the said deed executed by said Ely to said Roberts be declared void, and that the said Roberts, his agents, etc., be restrained from selling or in any way disposing of said premises, and for general relief, also prayer for process.

At the February term, 1860, the court ordered that an injunction issue as prayed for.

On the 21st day of February, 1860, said Roberts filed his answer to said bills.

So far as the allegations in the original bill are concerned, the answer of Roberts is the same as the answer of Ely; and as to the supplemental bill, admits that the defendants in error filed their original bill, praying for relief against Ely, as therein alleged. Avers that before the sale by Ely, the defendants in error presented their original bill to the master in chancery for Lee county, and made application to the master for an injunction to be issued thereon in accordance with the prayer thereof; which application the master refused; and that after such application had been so refused, Ely, as such trustee, on the 7th day of February, 1860, proceeded to sell, and did sell, the said premises, under and by virtue of said trust deed, and that Roberts, who was the owner of the note, became the purchaser, at the price of $460, which sum was then and there indorsed on the note; and that Ely, as such trustee, thereupon executed and delivered to him, Roberts, a deed for said premises, accordingly.

Denies all unlawful combination, etc. Submits to the court that there is no equity upon the face of the bills, and prays the same benefit of such defense as if he had demurred thereto, and prays to be hence dismissed, etc.; which answer is sworn to.

At the November term, 1860, complainants (below) entered their motion to strike Roberts' answer from the files; and thereupon Roberts entered his cross-motion for leave to have answer sworn to, and filed in thirty days; which cross-motion was sustained; whereupon complainants (below) entered their motion to strike Ely's answer from the files,—and Ely by his solicitor then entered his cross-motion for leave to have his answer again sworn to; which cross-motion was also sustained.

Afterwards, at said November term, complainants (below) had leave to withdraw their replication to the answers of defendants (below), and to have cause set for hearing on the bills and answers; which was accordingly done.

At the February term, 1861, of said court, the cause coming on for final hearing upon bills and answers, and upon the stipulation of the parties to the effect that no part of the debt, which the trust deed was given to secure, was incurred for the purchase money or improvement of said premises, the court thereupon entered the following decree:

" It is declared by the court that the plaintiffs (defendants in error) are entitled to the premises in question during the lifetime of Martin Eastwood, and after his death, during the lifetime of the said Mary Eastwood, and until the youngest child shall become twenty-one years of age, some one of them continuing to occupy the same. It is therefore ordered, ad-

judged and decreed by the court, that the defendants herein, (plaintiffs in error,) their agents, attorneys, executors, administrators and assigns, be·enjoined from proceeding in any manner whatever to obtain possession of said premises, described as follows, to wit: (here follows description of premises in controversy), during the lifetime of the said Martin Eastwood, and after his death during the lifetime of his widow, and until his youngest child shall become twenty-one years of age, some one of them continuing to occupy the same; and that the defendant (below) pay the plaintiffs their costs in this suit to be taxed," etc.

The errors assigned are as follows:

The court erred in rendering decree for complainants below as entered.

The court erred in not dismissing bill for want.of equity on its face.

The court erred in enjoining plaintiffs in error from proceeding to recover possession of said premises in the manner specified in said decree.

The court erred in entering a decree against plaintiffs in error for costs.

James K. Edsall, for Plaintiffs in Error.

W. E. Sheffield, for Defendants in Error.

Caton, C. J. The statute says, the homestead "shall be exempt from levy and forced sale, under any process or order from any court of law or equity in this State." This sale was made by a trustee under a trust deed, and was not made under a levy under any process or order of any court of any kind, and we cannot hold it to be within the law, without altering the statute itself. There may be as much propriety and necessity for exempting the homestead from sale for the payment of debts under a trust deed, as from sale under legal process, and probably had the legislature thought of this case, they would have provided for it in the law. But they did not do so, and we have no authority to do it for them. It is our place to administer the law as they made it, and we must do it without evasion. This deed having been executed before the passage of the law of 1857, is not affected by it.

The decree is reversed, and the bill dismissed.

*Decree reversed.*