## JANE C. CRANE

*v.*

## WILLIAM H. CRANE *et al.*

| 81 | 165 |
| 23a | 162 |
| 81 | 165 |
| 125 | 437 |
| 81 | 165 |
| 158 | 297 |
| 81 | 165 |
| 166 | 447 |
| 81 | 165 |
| 176 | 93 |
| 81 | 165 |
| 212 | 4 96 |

1. DEED OF MARRIED WOMAN—*setting aside in equity.* Where a married woman sought, in equity, to have a deed, executed by her and her husband, set aside on the ground its execution was obtained by fraud, coercion and duress, the proof showed, that before making the conveyance she advised with others in relation to making it, and after its execution voluntarily gave possession, and took other property, which she occupied and

Opinion of the Court.

enjoyed for several years, when she surrendered her rights therein for the sum of $700 from her prior grantee: *Held*, that her acts and conduct and long acquiescence in the transaction, were wholly inconsistent with the charge of fraud, etc., and that she was not entitled to have the conveyance set aside.

2. ACKNOWLEDGMENT OF DEED—*proof to overcome.* If the acknowledgment of a deed by a married woman can be overcome by parol evidence impeaching and contradicting the officer's certificate, it must be clear and satisfactory, and the acts and conduct of the party seeking the same must not be wholly inconsistent with the claim set up.

3. CHANGE OF VENUE—*when motion is too late.* A motion for a change of venue, in a chancery suit, on the ground of the prejudice of the judge, made after all the evidence has been heard, much of it being oral, comes too late, even though the petition shows that the alleged prejudice came to the knowledge of the applicant on the same day.

4. WITNESS—*competency of party as against heirs, etc.* On bill by a married woman against the heirs and administrator of a deceased party, to have a deed, executed by her and her husband to the intestate, set aside for fraud, etc., the complainant is not a competent witness to prove the facts upon which she seeks relief, and she being incompetent, so is her husband.

5. HOMESTEAD—*no release required by act of 1851, except as to forced sales.* Under the homestead act of 1851 a formal release or waiver of the right or exemption was required only as to forced sales by judicial process. This act had no relation to voluntary alienations, and no waiver or release in such cases was necessary.

6. SPECIFIC PERFORMANCE—*not until payment is made.* If a married woman, under a contract, is entitled to a conveyance for real estate in her possession, upon paying $600, and she accepts $700 for her equitable rights, and surrenders possession to her vendor, she will not be entitled to a specific performance of the original contract, although she may have been incapacitated from making the latter agreement.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. JAMES STEELE, Judge, presiding.

Mr. EDWARD H. BRACKETT, Mr. LUKE REILLEY, Mr. JESSE HARPER, and Mr. H. C. PATTERSON, for the plaintiff in error.

Mr. A. E. HARMON, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed in the Vermilion circuit court, August 3, 1865, by Jane C. Crane against William H.

Crane, her husband, and the widow, heirs and administrator of Oscar F. Harmon, deceased.

The main object of the bill was, to set aside a deed for sixteen and one-half acres of land, executed by the complainant together with her husband, William H. Crane, on the 19th day of July, 1856, to Oscar F. Harmon, on the ground of its having been extorted and obtained from the complainant by threats, menaces and duress.

The court below, on final hearing, dismissed the bill, and complainant appealed.

The land was owned by the complainant in her own right. The bill sets up that the deed purports to have been acknowledged before Thomas Short, clerk of the Vermilion county court, per John Short, his deputy, but that it was not acknowledged before such officer or person, but was acknowledged before one Thomas R. Forbes.

All the competent testimony produced on the part of the complainant, in regard to the circumstances of the execution of the deed and the acknowledgment, was that of Ellen Warner, a daughter of the complainant, and Mrs. Barker; for, although William H. Crane, the husband of complainant, was admitted, against objection, to testify, we regard him as not a competent witness, for reasons to be stated hereafter, and exclude his testimony from consideration.

These witnesses testify that Crane, Harmon and Forbes were present at the time of the execution of the deed, at the house of Crane, and give testimony as to the use of improper influence to induce Mrs. Crane to execute the deed, and of the acknowledgment being taken by Forbes—that John C. Short was not present, nor at the house that day. At that time Ellen Warner was but fourteen years of age; the time of giving her testimony was some thirteen years afterward. Without reciting the testimony of these witnesses at length, we deem it sufficient to say, that we regard their evidence as entirely counterbalanced by the opposing testimony, and the facts and circumstances of the case.

John C. Short testified that he took the acknowledgment of

the deed, as the certificate of acknowledgment purports that he did; that there were no persons present but Crane and his wife, Harmon and himself, unless it be that some of Mrs. Crane's small children passed in and out, and that she executed the deed freely and voluntarily, without the exercise of any improper influence upon her. It appeared that Forbes was also, at the time, a deputy of the county clerk, and that no writing in the deed or certificate of acknowledgment was in his handwriting.

Ellen Warner testified that Harmon promised Mrs. Crane, if she would sign the deed, he would give her a warranty deed of another house and lot, which is designated by the witnesses as the Hazle street property.

Mr. Webster, a neighbor of Mrs. Crane, living on an adjoining lot, testifies that in 1856, or a short time before she left the place conveyed by the deed in question, Mrs. Crane came into his yard, seeming to be much in a hurry, and said that Mr. Harmon had made her a proposition that he would give her $700 for the property in question, over and above all the claims which he had on it, if she would give him peaceable possession, and asked witness what she had better do; that he said to her he thought it was a liberal offer, and if it was his case he should accept it, if he had no means of paying the claims outside of the property; that Harmon was at her house at the time, he thinks. No doubt this was on the occasion of the execution of the deed.

Mr. Cunningham, another neighbor, who had been administrator of the estate of the former husband of Mrs. Crane, testifies to a conversation had with her shortly after her removal from the premises in question to the Hazle street property, and that she stated to him the terms of the trade she had made with Harmon. That for the premises in question, with the mortgages on it, Harmon was to let her have the Hazle street property, and if she kept it she was to pay him $600, and have a deed upon its payment; and if she did not keep it Harmon was to pay her $600; that the Hazle street property was valued at $1500. He further testified, that some three years after-

ward he was passing by this Hazle street property when Mrs. Crane called him in, and said that Harmon had offered her $700 to give up that property; that he (witness) told her if he was in her place he would take the $700. She said she could buy a place for herself with that money and some money she could get from her children; that, soon after, she did buy another place and removed on to it, and gave Harmon possession of the Hazle street property; and that she told him she got the $700 from Harmon.

In rebuttal, then, of the claim put forth, that the deed was obtained by coercion, and not properly acknowledged, is the certificate of acknowledgment by an officer of the law. The certificate is fortified by his testimony in confirmation of it. It is highly improbable that the actual acknowledgment should have been taken by one person, Forbes, and the certificate of the acknowledgment be made and signed by another person, Short. It is equally unlikely that Harmon, who appears to have been a careful lawyer, would have accepted a deed to property so acknowledged, as known by him, with such a certificate of acknowledgment.

Previous to the execution of the deed, Mrs. Crane appears to have sought disinterested advice in regard to the acceptance of the proposition under which the deed was made, and was advised, as being for her best interest, to accept it. After the execution of the deed, she yields up the property to Harmon, leaves it, and goes into the possession of the Hazle street place, which she took from Harmon in exchange. She continues in possession of the latter place for some three years, when she again asks advice in regard to an offer from Harmon of $700 for the surrender of her interest in the latter property. She is advised to take it. She does so—takes the $700 from Harmon, gives up to him possession of the place, and removes on to a place she buys with this money in part, and has ever since remained upon this last place, and Harmon and his heirs have ever remained in the possession of the premises in controversy conveyed by the deed of July 19, 1856. Here has been, ever since the execution of the deed, a continuous enjoy-

ment of the property and its avails, received in exchange for the premises conveyed by that deed.

There have been all the while, on the part of Mrs. Crane, unequivocal acts of confirmation of and acquiescence in that deed. Forbes died in 1860, and Harmon in 1864. No question in regard to the deed appears to have been made during the lifetime of Harmon. Not until after the death of both Forbes and Harmon, and on the 3d day of August, 1865, nine years after the making of the deed, is this bill of complaint exhibited, setting up that Forbes was the officer who took the acknowledgment, and not Short, and that Harmon, in conjunction with the husband of the complainant, wrongfully obtained the execution of the deed. The facts are inconsistent with the claim put forth. The proof clearly fails to show any title to relief as respects any wrong in obtaining the execution of the deed, or any defect in the acknowledgment or certificate thereof.

There are some minor points to be noticed. It is insisted that the court erred in refusing the motion of the complainant for a change of venue because of the prejudice of the judge. The motion was not made until after all the evidence had been heard by the court. Much of the testimony was that of witnesses examined orally in open court. Had the application been granted at that stage of the cause, when it was made, it would have necessitated a continuance, and the hearing which had been had would have gone for naught, and the evidence would have had to be reproduced upon another hearing. We think the motion came too late at that stage of the cause— although the affidavit stated that the knowledge of the alleged prejudice first came to the complainant on the morning of the day of the application—and that the motion was properly overruled.

It is assigned for error that the court refused to permit the complainant to testify in her own behalf. She was plainly excluded by the second section of the "act in regard to evidence," etc., because the adverse party defended as the heirs and administrators of Oscar F. Harmon, deceased; and she

herself not being admissible as a witness, her husband was not properly admitted as a witness on her behalf.

It is insisted that there was a homestead right in the premises conveyed by this deed, and that it was not released by the deed, as there was not in it any express waiver of the homestead right. The deed was made before the amendatory act of February 17, 1857, and depends upon the original Homestead Act of February 11, 1851. That respected only the protection of the homestead from a forced sale under judicial process. A formal release, or waiver, was made necessary to subject it to a forced sale; but there was no prohibition whatever upon the voluntary alienation of the homestead. The original act had no respect to such an alienation of it. *Ely* v. *Eastwood*, 26 Ill. 107; *Smith* v. *Marc*, id. 150.

It is made a point that Harmon never conveyed to appellant the Hazle street property, which was a part of the consideration of the deed, and that, being a married woman, she could not make any valid agreement whereby she would surrender her equitable interest therein.

Appellant had given the consideration for that property, and had entered into the possession of it. If there was default on the part of Harmon, in not conveying it as he had agreed, the proper remedy would have been by bill for a specific performance of the agreement to convey; but such a bill would have had the difficulty to encounter of the non-payment of the $600, which was to precede the conveyance; and the further one, that appellant had accepted from Harmon $700 in lieu of such conveyance, which, notwithstanding the incapacity of a married woman to make agreements, would have been an obstacle in the way of a bill for specific performance.

Considerable stress is laid by counsel upon the representations made by Harmon to appellant, as testified to by Ellen Warner. They assume such representations to have been made, and that they were false and fraudulent; but the witness Short's relation of the transaction of the execution and acknowledgment of the deed is inconsistent with the testimony of Ellen Warner in the respect of the making of such rep-

resentations, and other facts in the case do not consist with that testimony. In view of the whole evidence, we could not say that the court below was required to find that the fact of the making of such representations was satisfactorily established, which sufficiently disposes of this subject without adverting to what might have been the effect of the representations had they in fact been made.

The decree will be affirmed.

*Decree affirmed.*