105 Ill.2d 267 (1985)
473 N.E.2d 1316
In re ESTATE OF HELEN N. BABCOCK, Deceased (Russell Babcock, Appellant,
v.
Shirley J. McDonnell et al., Appellees.)
No. 59449.
Supreme Court of Illinois.
Opinion filed January 23, 1985.
*268 Tom B. Ewing, of Lewistown, for appellant.
*269 Ralph Froehling, of Froehling, Taylor & Weber, of Canton, for appellees.
Judgment affirmed.
JUSTICE WARD delivered the opinion of the court:
On September 9, 1982, the circuit court of Fulton County, on the petition of Russell Babcock, admitted to probate a copy of a will executed by Helen Babcock on June 18, 1970. On appeal by Shirley McDonnell and Norman Keane, residents of Michigan, who are the respondents and heirs of the deceased, the appellate court reversed the circuit court's decision and remanded for a new trial (119 Ill. App.3d 482), holding that certain testimony had been admitted in violation of the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8-201). We granted the petition of Russell Babcock for leave to appeal under Rule 315 (87 Ill.2d R. 315).
The decedent, Helen Babcock, was the wife of Cassius Babcock, who was born in Fulton County, Illinois. As a young man Cassius moved to Detroit, Michigan, where he met and married Helen. Cassius' brothers and their families remained in Illinois. Sometime later Cassius and his three brothers inherited undivided one-fourth interests in the family farm in Fulton County. Cassius died in 1969, leaving a will which devised his interest in the farm to Helen. Soon after his death Helen executed her will, dated June 18, 1970, a copy of which will is concerned in this appeal. In it Helen devised her interest in the farm to her husband's three brothers, Frank, Hardy and Russell. The will also bequeathed the funds of certain of her bank accounts to the three brothers. The will provided that the residue of her estate was to pass to her niece and nephew, Shirley McDonnell and Norman Keane, the appellees here, and to a trust that was created to provide care for Helen's sister Mae, for her lifetime.
During the 1970's, Helen and the Babcocks in Illinois *270 continued in a friendly relationship. In a letter in 1970 to Frank and Pearl Babcock, Helen revealed that she had "signed" her husband's share in the farm "back to the three brothers." A 1971 letter from Helen to Russell and Laura Babcock stated that she did not want any income from the farm. There were numerous cards and letters from her to the Babcocks in the 1970's evidencing Helen's continuing affection for them.
In May 1976, Helen moved to live with her cousin, Francis O'Neil. In a deposition, Mr. O'Neil stated that Helen at that time had expressed satisfaction with her will. In March 1977, Helen moved from her cousin's home and into an apartment in Detroit. The apartment was located four miles from where her niece and nephew lived and was across the street from the home of her niece's adult daughter. From that time on, Helen saw her niece and nephew, the appellees, more frequently. Mrs. McDonnell began to assist Helen in her financial affairs. In December 1977, Helen obtained, with the help of McDonnell, a safety deposit box at a more conveniently located branch of her bank. McDonnell testified that there was no will in the old deposit box at the time the contents were transferred to the new box. McDonnell's name was included as a person authorized to enter the new box. In February 1980, when Helen was dying of cancer, McDonnell entered the box and removed all of its contents. Helen died in March 1980. The will executed by Helen was never found. McDonnell did find a "conformed copy" of the will and forwarded it to her lawyer, who in turn sent it to a lawyer for the Babcocks in Illinois. The proceeding below followed.
The hearing on the admission of the will to probate was conducted in Fulton County on May 10, 1982. Because of the presumption of revocation for a lost will that last had been in the custody of the testator or testatrix, the bulk of the testimony at the hearing concerned *271 Helen's feelings toward her Illinois relatives and her intention to carry out the provisions in the the missing will. Laura Babcock, the wife of petitioner Russell, testified for the petitioner and identified numerous cards and letters that Helen had sent to them. Over the objection of the respondents, Laura also testified to conversations she had with the deceased. She testified that Helen in one conversation had told her that her niece and nephew were only concerned with "money, money, money."
The trial court held for the petitioner Russell Babcock, stating that the presumption of revocation of the missing will had been sufficiently overcome by contrary evidence. The appellate court agreed on that issue, but held that it was reversible error for the trial court to have admitted Laura Babcock's testimony concerning her conversations with the decedent. Her testimony was error under the Dead Man's Act because Laura was the wife of Russell Babcock, a party to the action.
The petitioner argues that the Dead Man's Act should not disqualify spouses of persons who are incompetent because the basis on which it was traditionally held that the Act applied to spouses of incompetent persons has been removed through a change in the interspousal privilege now found in section 8-801 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 8-801). Disagreeing, the respondents contend that the Dead Man's Act does apply to spouses of persons incompetent to testify. They contend, too, that the appellate court erred in concluding that the presumption of revocation of the will was overcome by sufficient evidence.
The appellate court correctly held that Laura Babcock's testimony concerning her conversations with the decedent was barred under what is commonly referred to as the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8-201). At common law, all interested parties to a suit at law were disqualified from testifying for their *272 cause. (See 2 J. Wigmore, Evidence sec. 575 (3d ed. 1940).) In 1867, our legislature struck this broad common law disqualification, but by statute preserved the disqualification in the case of actions concerning decedents and mental incompetents. (1867 Ill. Laws 183.) This gave rise to the name "Dead Man's Act" for that enactment. The Dead Man's Act, in its original form, also was a broad disqualification. It provided:
"[N]o party to any civil action * * * or person directly interested in the event thereof, shall be allowed to testify * * * when any adverse party sues or defends * * * as the executor, administrator, heir, legatee or devisee of any deceased person * * *." (1867 Ill. Laws 183.)
The Dead Man's Act was part of an enactment that also included the interspousal privilege, which retained the common law rule that spouses could not testify for or against each other, except under specified circumstances:
"No husband or wife, shall, by virtue of section 1 of this act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage * * *." (1867 Ill. Laws 184.)
In 1876, this court held that the spouse of a person who was incompetent to testify under the Dead Man's Act was also incompetent to testify. (Crane v. Crane (1876), 81 Ill. 165.) This holding became a settled interpretation of the Dead Man's Act. See Peters v. Peters (1941), 376 Ill. 237.
In 1935, the interspousal privilege was amended to remove the general disqualification of spouses testifying for and against each other. (1935 Ill. Laws 869.) The Dead Man's Act was not changed at that time. In 1973, the Dead Man's Act was repealed and replaced by a less restrictive statute (1973 Ill. Laws 1491), which essentially remains the current statute. The Act provides:
"In the trial of any action in which any party sues or defends as the representative of a deceased person * * * *273 no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased * * * or to any event which took place in the presence of the deceased or person under legal disability." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 8-201.)
The successor act thus no longer bars all testimony by interested persons. Unlike the previous statute, the Act now disqualifies the testimony by interested persons only to the extent that the testimony would be to a "conversation with the deceased" or an "event which took place in the presence of the deceased." (Ill. Rev. Stat. 1981, ch. 110, par. 8-201.) See generally Comment, Illinois Amended Dead Man's Act: A Partial Reform, 1973 U. Ill. L.F. 700.
The petitioner maintains that this court's interpretation in Crane v. Crane (1876), 81 Ill. 165, that spouses were also incompetent to testify resulted because the court was attempting to reconcile the Dead Man's Act and the interspousal privilege. The petitioner notes that both statutes were part of the same enactment, "AN ACT in regard to evidence and depositions in civil cases" (1871-73 Ill. Laws 405). The Dead Man's Act was section 2 of the Act and the interspousal privilege, which disqualified spouses from testifying for or against each other, was section 5 of the Act. (1871-73 Ill. Laws 406.) The amending of the interspousal privilege, the petitioner argues, should have removed the basis for including spouses as persons incompetent to testify. This court, however, has never stated that its interpretation of the Dead Man's Act hinged on the interspousal privilege. In Crane v. Crane (1876), 81 Ill. 165, where the interpretation was first made, the interspousal privilege (section 5) was not discussed. The court held simply that "[the complainant] herself not being admissible as a witness, her husband was not properly admitted as a witness on her *274 behalf." 81 Ill. 165, 170-71.) It is true that in Treleaven v. Dickson (1886), 119 Ill. 548, the court did refer to section 5 along with section 2, but from its language it is not clear that the court's interpretation of section 2 actually related to the provision in section 5 that spouses were incompetent to testify against each other. In any event, this court in Peters v. Peters (1941), 376 Ill. 237, reaffirmed the construction of the Dead Man's Act it gave in Crane. This was subsequent to the 1935 amendment of the interspousal privilege. (1935 Ill. Laws 869.) In Peters, this court stated:
"Appellants insist the trial court erred in sustaining objections to the competency of the wife of appellant George Peters and the husband of appellant Mabel Peters Carpenter as witnesses for them. Appellants do not contend that either George Peters or Mabel Peters Carpenter were competent to testify as witnesses to anything that took place during Mary A. Peters' lifetime. As they were incompetent, their wife and husband, respectively, were also incompetent. Jones v. Abbott, 235 Ill. 220; Smith v. Smith, 168 id. 488; Bevelot v. Lestrade, 153 id. 625; Shovers v. Warrick, 152 id. 355; Way v. Harriman, 126 id. 132; Treleaven v. Dixon, 119 id. 548." (Emphasis added.) Peters v. Peters (1941), 376 Ill. 237, 243.
The holding that the spouses of persons incompetent to testify are themselves incompetent to testify is not founded on the marital relationship, on which the interspousal privilege was based. Rather, it is based on reasons underlying the Dead Man's Act, which bars interested persons from testifying to conversations with the deceased because, among other reasons, there would be a temptation for the survivor to a conversation or transaction to testify falsely, and there could be no rebutting testimony to such testimony. For the same reasons, the spouses of persons incompetent to testify are deemed to have a sufficiently strong interest in the suit to justify their disqualification. The interpretation complained of *275 and the reasons underlying it have nothing to do with the interspousal privilege and changes in it.
The Dead Man's Act in Illinois and elsewhere has been vigorously criticized, and many feel it should be eliminated. We consider that criticisms of the statute should properly be addressed to the legislature. The Act was last amended in 1973, and it is for the legislature to determine if further change is desirable. The petitioner has made no claim that the Act is unconstitutional.
As this cause is to be remanded, it is not inappropriate to point out that it appears the trial court at the original hearing admitted testimony on behalf of the respondents themselves which was in violation of the Dead Man's Act.
For the reasons given, the judgment of the appellate court is affirmed.
Judgment affirmed.