2021 IL App (2d) 191113
No. 2-19-1113
Opinion filed February 1, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN W. MCDONALD III, Deceased | ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | No. 17-P-744 |
| (Shawn McDonald, Petitioner and Counterrespondent-Appellee, v. Ellizzette McDonald, Respondent and Counterpetitioner-Appellant). | ) ) ) ) ) | Honorable James R. Murphy, Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1                              I. INTRODUCTION

¶ 2      This appeal concerns the estate of decedent, John W. McDonald III. Decedent died intestate on December 11, 2017. Four days later, petitioner, Shawn McDonald (Shawn), decedent's brother, filed in the circuit court of Kane County a petition for letters of administration and an affidavit of heirship. The trial court appointed Shawn as the administrator of decedent's estate and declared decedent's parents—John W. McDonald Jr. and Brenda K. McDonald—and siblings—Shawn, Heather Ladue, and Brett McDonald—as his only heirs. Respondent, Ellizzette McDonald (Ellizzette), purporting to be decedent's surviving spouse, sought to vacate the order appointing Shawn as the administrator of decedent's estate and the order of heirship. The trial court denied Ellizzette's motion but granted her leave to proceed pursuant to section 9-7 of the Probate Act of

1975 (Probate Act) (755 ILCS 5/9-7 (West 2016)). Ellizzette then filed a petition for letters of administration, an affidavit of heirship, and a motion for judgment on the pleadings with regard to her petition for letters of administration. After the trial court denied Ellizzette's motion for judgment on the pleadings, the matter proceeded to a bench trial. Shawn moved for a directed finding at the close of Ellizzette's case. The trial court granted Shawn's motion, concluding that Ellizzette failed to present a *prima facie* case on the validity of her marriage to decedent. Ellizzette then filed a notice of appeal.

¶ 3       On appeal, Ellizzette raises five principal issues. First, she argues that the trial court erred when it appointed Shawn as the administrator of decedent's estate, because she was not provided with the statutorily required notice. Second, she asserts that the trial court erred in denying her motion for judgment on the pleadings. Third, she contends that the trial court erred in granting Shawn's motion for a directed finding. Fourth, she argues that the trial court committed reversible error in barring her from testifying, at the trial on her petition, regarding her marriage and heirship. Finally, she maintains that the trial court erred in denying her motion for a continuance. For the reasons set forth below, we affirm in part, reverse in part, and remand this matter for further proceedings.

¶ 4                                II. BACKGROUND

¶ 5       Decedent died intestate on December 11, 2017, in Paris, Illinois. As noted, Shawn is decedent's brother and Ellizzette purports to be decedent's surviving spouse.

¶ 6                                A. Guardianship

¶ 7       On March 7, 2017, Shawn filed in the circuit court of Kane County a petition for the appointment of a guardian for a disabled person. In support of the guardianship petition, Shawn submitted a physician's report stating that decedent suffered from "bipolar disorder with manic

and depressive episodes" as well as "alcohol use disorder (severe)." On May 30, 2017, the trial court entered an order declaring decedent a disabled person who "is totally without capacity" as specified in section 11a-3 of the Probate Act (755 ILCS 5/11a-3 (West 2016)) and appointing Shawn as the plenary guardian of decedent's person and estate. The record suggests that decedent did not participate in the guardianship proceedings. When made aware of the proceedings, decedent obtained counsel and objected to the order appointing Shawn as his guardian. However, the record does not show that a trial was conducted on whether the guardianship should have been entered.

¶ 8         B. Petition for Letters of Administration and Affidavit of Heirship

¶ 9     On December 15, 2017, four days after decedent's death, Shawn filed in the circuit court of Kane County (1) a petition for letters of administration and (2) an affidavit of heirship. In his affidavit of heirship, Shawn asserted that decedent had been married "once and only once and then to Debbie Greene McDonald," with said marriage ending in divorce sometime prior to 2012. Shawn stated that on July 11, 2017, decedent "participated in a wedding ceremony with Ellizzette Duvall Minnicelli." Shawn claimed, however, that the marriage was void *ab initio* because decedent lacked the capacity to consent to the marriage. Therefore, Shawn requested that decedent's parents and his three siblings be declared as decedent's heirs at law. The matter was assigned to Judge John A. Noverini. In an order bearing the handwritten date of December 18, 2017, but file-stamped December 19, 2017, Judge Noverini appointed Shawn as the administrator of decedent's estate. Judge Noverini also entered an order declaring heirship, listing decedent's parents and his three siblings as his only heirs. On December 21, 2017, the clerk of the circuit court issued letters of office advising of Shawn's appointment as the independent administrator of decedent's estate pursuant to the order entered by the trial court.

¶ 10                    C. Petition for Declaration of Invalidity of Marriage

¶ 11    On December 22, 2017, Shawn filed a verified "Petition for Declaration of Invalidity of a Marriage," pursuant to section 301(1) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/301(1) (West 2016)). The petition asserted as follows. On July 11, 2017, decedent participated in a marriage ceremony with an individual named "Ellizzette Duvall Minnicelli" in Edgar County, Illinois. Shawn first learned of the marriage ceremony when it was disclosed to him in open court on November 16, 2017, during a hearing in the guardianship case. Because decedent's person and estate were under plenary guardianship when he participated in the marriage ceremony, decedent lacked the legal capacity to consent to the marriage. At the time the marriage ceremony was performed, decedent had actual knowledge of the existence of the guardianship and was actively participating in litigation in the guardianship case. Further, at the time the marriage ceremony was performed, "Ellizzette Duvall Minnicelli" had actual knowledge of the existence of the guardianship and was actively assisting decedent in pursuing then-ongoing litigation in the guardianship case. Shawn prayed for the entry of an order "declaring the invalidity of the marriage of the Decedent *** to Ellizzette Duvall Minnicelli and further declaring the said marriage to be void *ab initio*." Attached to the petition was a copy of a "Certification of Marriage" issued by the clerk of Edgar County, Illinois. Shawn voluntarily withdrew this pleading without prejudice on March 7, 2018.

¶ 12                         D. Ellizzette's Motion to Vacate

¶ 13    Meanwhile, on January 4, 2018, counsel entered an appearance on Ellizzette's behalf. That same day, Ellizzette filed a motion for substitution of judge as a matter of right. Ellizzette's motion was granted, and the matter was transferred to Judge James R. Murphy.

¶ 14     On January 17, 2018, Ellizzette filed a "Motion to Vacate Order Appointing Administration and Order of Heirship."[1] Ellizzette's motion asserted that the order appointing Shawn as the administrator of decedent's estate and the order of heirship should be vacated because Shawn obtained letters of administration and assumed control of decedent's estate under false pretenses. Specifically, Ellizzette contended that, (1) as decedent's surviving spouse, she is decedent's sole heir and has a superior right to act as decedent's administrator and (2) Shawn intentionally failed to provide her notice of his petition for letters.

¶ 15     On March 7, 2018, Shawn filed his response to Ellizzette's motion to vacate. Shawn asserted that, although Ellizzette participated in a "marriage ceremony" with decedent, decedent lacked the capacity to enter into a "marriage contract," because of the guardianship. In support of his position, Shawn cited section 11a-22(b) of the Probate Act (755 ILCS 5/11a-22(b) (West 2016)). Section 11a-22(b) provides that "[e]very note, bill, bond or other contract by any person for whom a plenary guardian has been appointed or who is adjudged to be unable to so contract is void against that person and his estate, but a person making a contract with the person so adjudged is bound thereby." 755 ILCS 5/11a-22(b) (West 2016). Shawn asserted that marriage is a contract. Hence, pursuant to section 11a-22(b), the "marriage contract" entered into on July 11, 2017, between decedent and Ellizzette is void. Since the marriage is void, decedent was not married at the time of his death and his only heirs at law are his parents and his siblings. Shawn did not dispute that Ellizzette was not provided notice of his petition for letters of administration. He asserted,

---

[1] On the same date, Ellizzette filed a "Motion to Reconsider Order Appointing Administration and Order of Heirship." The motion to reconsider was substantively identical to the motion to vacate.

however, that notice is required to be served on only a decedent's heirs. Since Ellizzette is not an heir, there was no need to serve notice on her.

¶ 16    In her reply to Shawn's response, Ellizzette argued that section 11a-22(b) of the Probate Act does not address the validity of a marriage but, rather, is intended to address transactional contracts entered into by a ward. Ellizzette further asserted that her marriage to decedent enjoys a strong presumption of validity under Illinois law (see *Larson v. Larson*, 42 Ill. App. 2d 467, 472 (1963) ("When the celebration of marriage is shown, the contract of marriage, the capacity of the parties, and, in fact, everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed ***.")) and that the guardianship over decedent did not compel the conclusion that he was unable to consent to marriage, because the appointment of a guardian is not sufficient, in and of itself, to show that the person was incompetent to have consented to a marriage (see *Pape v. Byrd*, 145 Ill. 2d 13, 21 (1991)). Ellizzette added that questions regarding the validity of her marriage are governed by the Marriage Act (750 ILCS 5/101 *et seq.* (West 2016)). Further, section 302(b) of the Marriage Act prohibits any attempt to invalidate a marriage after the death of either party to the marriage on the basis of one party's incapacity to consent. 750 ILCS 5/302(b) (West 2016) ("In no event may a declaration of invalidity of marriage be sought after the death of either party to the marriage under subsections (1), (2), and (3) of Section 301."); see also 750 ILCS 5/301(1) (West 2016) ("The court shall enter its judgment declaring the invalidity of a marriage *** entered into under the following circumstances: (1) a party lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or infirmity or because of the influence of alcohol, drugs or other incapacitating substances, or a party was induced to enter into a marriage by force or duress or by fraud involving the essentials of marriage[.]"). Despite his knowledge of Ellizzette's and decedent's marriage,

Shawn failed to challenge the marriage during decedent's lifetime and was therefore time-barred from attempting to invalidate the marriage. See 750 ILCS 5/301, 302(b) (West 2016). Thus, Ellizzette reasoned, the marriage was valid as a matter of law and she is decedent's surviving spouse and sole heir at law.

¶ 17    On April 18, 2018, the trial court denied Ellizzette's "motion to vacate."[2] In the same order, the court granted Ellizzette leave to file a petition for the appointment of an administrator and an affidavit of heirship pursuant to section 9-7 of the Probate Act (755 ILCS 5/9-7 (West 2016)). The court directed Ellizzette to file the documents by May 2, 2018.

¶ 18        E. Ellizzette's Petition for Letters of Administration and Shawn's Response

¶ 19    On May 1, 2018, Ellizzette filed her petition for letters of administration and affidavit of heirship. In the filings, Ellizzette stated that she is decedent's surviving spouse. She further asserted that, since decedent had no children, she is decedent's sole heir.

¶ 20    On May 25, 2018, Shawn filed his response to Ellizzette's petition for letters of administration and affidavit of heirship. In his response, Shawn argued that, pursuant to section 9-7 of the Probate Act (755 ILCS 5/9-7 (West 2016)), Ellizzette had three months after the issuance of letters of administration to him to file her own petition for letters of administration. Shawn argued that Ellizzette's petition for letters of administration, which was filed on May 1, 2018, was untimely because it was filed more than three months after letters of administration were issued to him. Shawn further asserted that nothing in the statute allows the court to grant an extension to file

---

[2]Although the trial court's April 18, 2018, order references only the denial of Ellizzette's motion to vacate, we conclude that it also dispensed with the motion to reconsider, which was nearly identical to and raised the same substantive arguments as the motion to vacate.

a petition for letters of administration outside the three-month window. Therefore, he argued, the court lacked jurisdiction to consider Ellizzette's petition.

¶ 21                    F. Ellizzette's Motion for Judgment on the Pleadings

¶ 22    On June 7, 2018, Ellizzette filed a motion for judgment on the pleadings. Initially, Ellizzette argued that the trial court was empowered to extend the filing window for a pleading under section 9-7 of the Probate Act (755 ILCS 5/9-7 (West 2016)) beyond the three-month window, because the language of the statute is permissive and controlling law makes clear that a party seeking to challenge an order declaring heirship is free to do so at any time during the administration of the estate or after the estate has been closed. Ellizzette also contended that, since Shawn failed to deny her verified factual allegations, including that she is decedent's surviving spouse, these allegations were deemed admitted. See 735 ILCS 5/2-610 (West 2016). Alternatively, Ellizzette argued that the only basis to challenge the validity of a marriage after the death of one of the parties to the marriage is "the narrow bar against 'prohibited marriages' under the [Marriage Act]." See 750 ILCS 5/301(4), 212 (West 2016). Ellizzette requested full judgment on the pleadings in her favor or, alternatively, "partial judgment on the pleadings in [her] favor *** limiting discovery and hearing on the Petition to the narrow issue of whether the Decedent's marriage to [her] constitutes a 'prohibited marriage' under the [Marriage Act]."

¶ 23    On July 3, 2018, Shawn filed a response to Ellizzette's motion for judgment on the pleadings. Shawn reiterated his position that section 11a-22(b) of the Probate Act (755 ILCS 5/11a-22(b) (West 2016)) bars any contract, including one for marriage, entered into by someone such as decedent, for whom a plenary guardian had been appointed. Thus, he concluded, any marriage contract between Ellizzette and decedent was void. Shawn further contended that judgment on the pleadings was inappropriate because there remained a factual issue regarding whether the alleged

marriage between Ellizzette and decedent was valid. See *In re Estate of Davis*, 225 Ill. App. 3d 998, 1000 (1992).

¶ 24    On September 10, 2018, the trial court denied Ellizzette's motion for judgment on the pleadings as "premature."

¶ 25                    G. Shawn's Motion for Judicial Notice

¶ 26    On October 2, 2018, Shawn filed a motion requesting the trial court to take judicial notice of the "Certified Copy of Edgar County, Illinois[,] Marriage Application and Record of [decedent] and Ellizzette Duvall Minicelli [*sic*]." Shawn attached three documents to his motion: (1) a certified copy of a "Certification of Marriage" between decedent and "Ellizzette Duvall Minnicelli" issued by the clerk of Edgar County, Illinois; (2) a certified copy of a "Marriage License" for decedent and "Ellizzette Duvall Minnicelli" issued by the clerk of Edgar County, Illinois; and (3) a certified copy of a "Marriage Application and Record" issued by the clerk of Edgar County, Illinois. On November 30, 2018, the trial court entered an order granting Shawn's motion for judicial notice.

¶ 27    On April 15, 2019, the trial court entered an order setting the matter for trial over several dates beginning on November 18, 2019.

¶ 28                    H. Ellizzette's Counsel's Motion to Withdraw

¶ 29    On September 12, 2019, Ellizzette's counsel moved to withdraw. The trial court granted counsel's motion in an order dated September 18, 2019. The same order further provided that (1) Ellizzette would have 21 days "to find other counsel and/or file a [s]ubstitute [a]ppearance," (2) the scheduled November 18, 2019, trial date would stand, and (3) all pending motions and status of counsel would be continued to October 23, 2019.

¶ 30                    I. Shawn's Motion *In Limine*

¶ 31    On October 16, 2019, Shawn filed a "Motion *In Limine*" seeking to bar Ellizzette from testifying or presenting any evidence as to any marital relationship she had with decedent. Citing *Laurence v. Laurence*, 164 Ill. 367 (1896), *In re Estate of Diak*, 70 Ill. App. 2d 1 (1966), and *In re Estate of Enoch*, 52 Ill. App. 2d 39 (1964), Shawn alleged that the admission of such testimony would violate the Dead Man's Act (735 ILCS 5/8-201 (West 2016)).

¶ 32    On October 23, 2019, Ellizzette filed an appearance on her own behalf. A week later, Ellizzette filed a response to Shawn's motion *in limine*. Ellizzette argued, *inter alia*, that the "plain text" of section 8-201(d) of the Dead Man's Act provides that "[n]o person shall be barred from testifying as to any fact relating to the heirship of a decedent." 735 ILCS 5/8-201(d) (West 2016). Ellizzette contended that, because her testimony would "relate to facts surrounding the heirship of [decedent], this testimony falls precisely within the exception carved out within the Dead Man's Act itself." Ellizzette therefore contended that her testimony as to her marriage to decedent, which would directly relate to heirship, should not be barred.

¶ 33    On November 13, 2019, following oral argument by the parties, the trial court granted Shawn's motion *in limine*. The court explained that "Illinois law says that the spouse cannot testify as to heirship, and there's cases cited, and they weren't responded to." That same day, the trial court entered a written order in accordance with its oral finding, granting Shawn's motion *in limine* and barring Ellizzette from "testifying regarding her putative marriage to the decedent or regarding the decedent's heirship."

¶ 34                              J. Ellizzette's Motion for Continuance

¶ 35    At the hearing on November 13, 2019, the court asked Ellizzette if she would be ready for trial on November 18, 2019. Ellizzette responded that she would not be ready but stated that she was aware that "that's the date" and that she was "not looking to *** waste the Court's time." She

further informed the court that she would be present on November 18 "if [she is] expected to be [in court]."

¶ 36    At 3:49 a.m. on November 18, 2019, Ellizzette filed a "Motion for Continuance" seeking to continue the trial to December 3, 2019, or later. In the motion, Ellizzette alleged that she had good cause for requesting an extension, because (1) her father had been hospitalized in Arizona and declared "end of life"; (2) her mother, whom she categorized as a "key witness," would be unable to attend the trial due to the status of Ellizzette's father; (3) Ellizzette's attorneys withdrew from the case due to the "high outstanding balance" of attorney fees that Ellizzette was unable to pay, because she was involved in an automobile accident that resulted in significant out-of-pocket medical expenses; and (4) Ellizzette was unable to obtain the testimony of two key witnesses. Ellizzette also asserted that she had paid the outstanding balance owed to her prior attorneys and requested that they be allowed to reenter an appearance on her behalf. The trial court denied the motion for a continuance.

¶ 37                                K. Trial

¶ 38    The matter proceeded to trial on Ellizzette's petition, with the evidence centered on the validity of Ellizzette's marriage to decedent. In accordance with the trial court's ruling on Shawn's motion *in limine*, Ellizzette did not testify. However, Ellizzette called three witnesses in her case-in-chief: Diane Boyer, Dr. Visar Belegu, and Ray Bement.

¶ 39    Boyer testified that she was involved in the preparations for Ellizzette's and decedent's marriage and observed Ellizzette and decedent interacting with each other every week in 2017. Boyer also opined that Ellizzette and decedent were happily living together.

¶ 40    Dr. Belegu, a colleague of decedent, testified that he was aware that Ellizzette and decedent had married. Dr. Belegu further testified that he had contact with decedent two or three times a

week in 2017. In Dr. Belegu's opinion, decedent was happily married. On cross-examination, Dr. Belegu testified that he was not present at any marriage ceremony between Ellizzette and decedent and that he was not aware of any witnesses to the marriage.

¶ 41    Bement testified that he met Ellizzette and decedent in 1982. In 2017, Bement learned that Ellizzette and decedent were engaged. Bement participated in preparations for a marriage ceremony between Ellizzette and decedent. To that end, on July 11, 2017, Bement performed Ellizzette's and decedent's marriage ceremony in the participants' home in Paris, Edgar County, Illinois. Bement further testified that he signed the marriage certificate in the kitchen of Ellizzette's and decedent's home in Paris. After Bement signed the marriage certificate, he, Ellizzette, and decedent went to Allerton Park in Monticello (Piatt County) for an additional "more secular" ceremony. Bement also stated that he attended a Ketubah signing on July 10, 2017, at Ellizzette and decedent's home in Paris. Bement explained that a Ketubah is "like what Christians would call a marriage license" and states what each party will bring to the relationship. Following the marriage, Bement interacted with Ellizzette and decedent on professional and personal bases.

¶ 42    On cross-examination, Bement testified that it was his idea to be the officiant at Ellizzette and decedent's marriage ceremony. He obtained a certificate to become an officiant from an online ministry in a process that took between 5 and 10 minutes. The following exchange then ensued between Shawn's counsel, Bement, Ellizzette, and the trial court:

> "Q. And the marriage ceremony, as you testified on direct, the secular marriage ceremony was conducted in Piatt County; is that a fair statement?
>
> A. Yes.
>
> * * *

[Ellizzette]: Objection, Your Honor. Mr. Bement also testified earlier that he performed a marriage ceremony at our home in Paris.

[Shawn's counsel]: His testimony according to my notes was that the secular part of the marriage was conducted in Piatt County. That's what he testified to.

THE COURT: All right. You'll be able to redirect questions, so overruled."

Bement further testified that the only people present for the Piatt County ceremony were decedent and Ellizzette.

¶ 43   On redirect examination, Bement reiterated that he signed the marriage certificate in the kitchen of Ellizzette and decedent's house in Paris, Edgar County, Illinois.

¶ 44   Following Bement's testimony, Ellizzette stated that she had no other witnesses. Shawn's counsel then orally moved for a directed finding on the issue of the validity of the marriage. Counsel advanced several grounds for his position. First, he asserted that the best evidence of the existence of a marriage is the marriage certificate itself but that "[t]hey haven't produced any documents with respect to that." Second, counsel asserted that "[t]he case law in Illinois" requires two witnesses to a marriage but that Bement "conducted a secular proceeding in Piatt County apparently with no witnesses." Third, counsel posited that, before a marriage where one of the participants is a ward of the court, the Probate Act requires the court to conduct a best-interest hearing. Counsel noted that, although decedent was a ward of the court, no hearing was ever held to determine if the marriage was in decedent's best interest. Fourth, counsel maintained that marriage is a "civil contract" and the Probate Act prohibits a ward of the court from entering into a contract with any other person. Accordingly, Shawn requested that the trial court dismiss Ellizzette's claim that she is decedent's heir.

¶ 45    Ellizzette responded that she and decedent "followed the rules according to the Edgar County circuit clerk." Specifically, they "produced the documentation [they] were required to produce," "filled out the application," and "waited for [the circuit clerk] to contact [them] and tell [them] that [their] marriage application for a license had been granted." Subsequently, Ellizzette and decedent "had an interfaith marriage ceremony in Edgar County, Illinois, in Paris, in [her] home" and "a religious celebration in Monticello."

¶ 46    In reply, Shawn's counsel asserted that Ellizzette did not refute any of the arguments he previously made with respect to the validity of the marriage. Counsel further stated that, if Ellizzette wanted to prove the validity of her purported marriage to decedent,

> "all [she] had to do is prove the marriage certificate, and the reason [she] didn't is because [she] know[s] [she] can't. [She] didn't bring the marriage certificate in here. [She] didn't bring the application. [She] didn't bring the license in here. You should ask yourself why [she] didn't do that."

Ellizzette responded that, prior to Shawn's counsel's involvement in the case, her attorney produced a marriage license application and a marriage certificate and an individual "came to the Court to represent that she had issued the marriage certificate license in Edgar County."

¶ 47              L. Trial Court's Ruling on the Motion for a Directed Finding

¶ 48    The trial court granted Shawn's motion for a directed finding. The court ruled that to present a *prima facie* case on the validity of her marriage to decedent, Ellizzette had to present a valid application for a marriage license and evidence of a ceremony performed in Edgar County and witnessed by two individuals. The court found, as a matter of law, that Ellizzette "did not present a *prima facie* case of a valid marriage ceremony under the circumstances such as would be sufficient to meet her burden of proof on all of the elements." The court stated that "[i]t would

have been simple to present the evidence of a marriage license and certificate and application and have some witness testify about that, but that was not done." In ruling, the court further stated:

> "And while it is not as clear as [Shawn's counsel] presents as to the case law precedents—and in that I'm referring to the arguments that [Ellizzette] had when she was represented by counsel during motion practice on a motion for judgment on the pleadings— it is clear that there was an order finding and adjudicating Decedent as a disabled person and in immediate need of a plenary guardianship and that there was no best-interest hearing held; that the punitive [*sic*] marriage was not known to the Administrator until November 2017; and that the marriage was not properly witnessed or licensed or subject to a best-interest determination by the probate court."

The trial court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay appeal. On December 18, 2019, Ellizzette filed a notice of appeal.

¶ 49                                    II. ANALYSIS

¶ 50    On appeal, Ellizzette raises five principal issues, which we address as follows. First, she argues that the trial court erred when it appointed Shawn as the administrator of decedent's estate, because she was not provided with the statutorily required notice. Second, she maintains that the trial court erred in denying her motion for a continuance. Third, she asserts that the trial court erred in denying her motion for judgment on the pleadings. Fourth, she argues that the trial court committed reversible error in barring her from testifying regarding her marriage and heirship. Finally, she contends that the trial court erred in granting Shawn's motion for a directed finding.

¶ 51                                    A. Notice

¶ 52    As her initial assignment of error, Ellizzette contends that the trial court erred "when it granted Shawn's petition [for letters of administration] without any notice to [her], declared that [she] is not [decedent's] heir, and thus necessarily declared their marriage invalid." Ellizzette has failed to provide an adequate record to address this claim.

¶ 53    As noted above, on December 19, 2017, the trial court entered orders appointing Shawn as the administrator of decedent's estate and declaring heirship. The order appointing Shawn as the administrator of decedent's estate states that "due notice has been given to all parties according to law." On January 17, 2018, Ellizzette filed her motion to vacate the order appointing Shawn as the administrator of the estate and the order of heirship. The arguments in Ellizzette's motion and her reply to Shawn's responses thereto are nearly identical to the arguments she now raises on appeal and are grounded on the premise that she was not provided the statutorily required notice. Shawn did not dispute that Ellizzette was not provided notice of his petition for letters of administration, but he argued that notice to Ellizzette was not required because she was not decedent's heir. The trial court held a hearing on the motion on April 18, 2018, and denied it the same day.

¶ 54    Although not captioned as such, Ellizzette's argument on appeal is essentially a challenge to the trial court's denial of her motion to vacate the order appointing Shawn as the administrator of the estate and the order of heirship. However, our ability to review this issue for error is hampered by the lack of either a transcript from the April 18, 2018, hearing on Ellizzette's motion or an acceptable substitute. See Ill. S. Ct. R. 323 (eff. July 1, 2017) (allowing for a bystander's report or an agreed statement of facts). As the appellant, Ellizzette has the burden to present this court with a sufficiently complete record on appeal. *In re Marriage of Gulla*, 234 Ill. 2d 414, 422 (2009); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). As our supreme court has stated, "[a]n issue relating to a circuit court's factual findings and basis for its legal conclusions obviously

cannot be reviewed absent a report or record of the proceeding." (Internal quotation marks omitted.) *In re Marriage of Gulla*, 234 Ill. 2d at 422; see also *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005) (stating that any issue relating to the court's factual findings and the basis for its legal conclusions cannot be reviewed without a record of that proceeding). Accordingly, absent an adequate record preserving the claimed error, a reviewing court must presume that the circuit court's action had a sufficient factual basis and that it conformed with the law. *In re Marriage of Gulla*, 234 Ill. 2d at 422; *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Accordingly, we presume that the trial court's ruling on the motion to vacate conformed with the law.

¶ 55    We also observe that, despite the trial court's decision to deny Ellizzette's motion to vacate, it entered an order allowing her to file a petition for letters of administration and an affidavit of heirship pursuant to section 9-7 of the Probate Act (755 ILCS 5/9-7 (West 2016)). In fact, Ellizzette filed a petition for letters of administration and an affidavit of heirship, asserting that she is decedent's surviving spouse and sole heir. The trial court held a hearing on Ellizzette's pleadings. Thus, Ellizzette was given an opportunity to address her claim that she is decedent's sole surviving spouse and only heir. Given these circumstances, we fail to see how Ellizzette was prejudiced by any lack of notice.

¶ 56                                    B. Continuance

¶ 57    Ellizzette also claims that the trial court erred in denying her motion for a continuance, made on the day of trial. To place Ellizzette's argument in context, we briefly review the circumstances surrounding the motion.

¶ 58    On April 15, 2019, the trial court entered an order setting the matter for trial on November 18, 2019. On September 12, 2019, Ellizzette's counsel moved to withdraw. The trial court granted

counsel's motion in an order dated September 18, 2019. The September 18, 2019, order also (1) granted Ellizzette 21 days "to find other counsel and/or file a Substitute Appearance," (2) provided that the November 18, 2019, trial date would stand, and (3) continued the matter to October 23, 2019, on all pending motions and status of counsel. At the hearing on October 23, 2019, Ellizzette filed an appearance on her own behalf. During that hearing, the matter was continued to November 13, 2019.

¶ 59    At the hearing on November 13, 2019, Ellizzette informed the court that she intended to call several witnesses at the trial on November 18, including her mother, Patrick Rummerfield, Dr. Belegu, Eric Westacott, and Bement. Ellizzette stated that she would not be calling her father "because of his illness." She also stated that "[t]hree days ago," *i.e.*, November 10, 2019, her father had been declared "end of life" and that he "could die at any day now per the doctors." Prior to the conclusion of the hearing on November 13, the following colloquy took place between the trial court and Ellizzette:

> "THE COURT: Are we ready to go? Are you ready to go then on Monday morning [November 18] at 9:00 with your witnesses?
>
> [Ellizzette]: Um, I would—to answer your question right now, no. I'm not ready at this moment, Your Honor. I'm telling you the truth. I'm not ready at this moment because of some of those things. I don't want to—but I do know that's the date, and I'm not looking to—again, I'm not looking to, um waste the Court's time.
>
> THE COURT: But you are going to be here on Monday then—
>
> [Ellizzette]: Yes, sir.
>
> THE COURT:—to proceed?
>
> [Ellizzette]: Oh, I will be here if I'm expected to be here, Your Honor."

¶ 60      At 3:49 a.m. on November 18, 2019, Ellizzette filed a "Motion for Continuance" seeking to continue the trial to December 3, 2019, or later. In the motion, Ellizzette alleged that she had good cause for requesting an extension because (1) her father had been hospitalized in Arizona and declared " 'end of life' Saturday, December 16, 2019 [*sic*]";[3] (2) her mother, whom Ellizzette described as a "key witness," would be unable to attend the trial due to the health status of Ellizzette's father; (3) her attorneys withdrew from the case due to the "high outstanding balance" of fees that Ellizzette was unable to pay, because she was involved in an automobile accident that resulted in significant out-of-pocket medical expenses; (4) she was unable to obtain the testimony of two "primary witnesses," Rummerfield and Westacott; and (5) she was unable to "liaise with her Counsel and take up *Pro Se* representation within the 60-day trial window," given "the substantial health limitations over the past several months." Ellizzette also represented that she had reconciled the outstanding balance owed to her prior attorneys and requested that they be allowed to reenter an appearance on her behalf.

¶ 61      At a hearing on Ellizzette's motion for a continuance on November 18, 2019, the trial court, after hearing argument from the parties, denied the motion. The court cited (1) a lack of due diligence on Ellizzette's part in presenting the motion or obtaining the testimony of Rummerfield and Westacott and (2) Ellizzette's failure to show that the testimony of the witnesses referenced in her motion would be material to the issues in the case. In response to Ellizzette's concern regarding

---

[3] In her November 18, 2019, motion, Ellizzette represented that her father had been declared " 'end of life' Saturday, December 16, 2019." We presume that Ellizzette meant to state that her father was declared "end of life" on Saturday, November 16, 2019, and not on some future date.

her father's health, the court stated, "If you have another reason for a continuance during the trial, then you'll bring it up at that point." The court then asked Ellizzette if she were prepared to proceed. Ellizzette responded that she "would like to proceed with the provision that, God forbid something happens, the court would consider an emergency."

¶ 62     A litigant does not have an absolute right to a continuance. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 94. Continuances are within the sound discretion of the trial court. *Doe v. Parrillo*, 2020 IL App (1st) 191286, ¶ 39; see also 735 ILCS 5/2-1007 (West 2016) (providing that "[o]n good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment"). A critical factor in the review of such rulings is whether the moving party has exercised due diligence in proceeding with the case. *Somers v. Quinn*, 373 Ill. App. 3d 87, 96 (2007). Moreover, once a cause has proceeded to trial, a motion for a continuance should show sufficient excuse for the delay, and the movant should present especially grave reasons to support his or her request. Ill. S. Ct. R. 231(f) (eff. Jan. 1, 1970) ("No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."); *Teitelbaum v. Reliable Welding Co.*, 106 Ill. App. 3d 651, 656 (1982) ("The moving party must give especially grave reasons for continuance once a case has reached the trial stage because of the potential inconvenience to the witnesses, the parties and to the court."). The decision to grant or deny a trial continuance will not be disturbed on appeal "unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion." (Internal quotation marks omitted.) *Doe*, 2020 IL App (1st) 191286, ¶ 39. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree

with the position taken by the trial court. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38.

¶ 63    Ellizzette argues that the trial court erred when it denied her motion for a continuance, made on the day of trial. In her motion, Ellizzette cited five principal reasons for requesting a continuance. On appeal, however, Ellizzette focuses on just two of those reasons—her father's illness and her attorneys' withdrawal. Ellizzette's failure to argue the three remaining grounds set forth in her motion results in the forfeiture of those bases on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (providing that points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing); *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 23 (holding that an appellant's failure to argue a point in the opening brief results in forfeiture). Moreover, after reviewing the record, we find nothing that would justify a conclusion that the trial court abused its discretion in denying her motion for a continuance on either of the two bases she advances in this appeal.

¶ 64    With respect to her father's illness, Ellizzette asserted at the hearing on her motion that her father had been hospitalized and declared "end of life" on November 16, 2019, just two days earlier. However, this statement is contradicted by an affirmation Ellizzette previously made to the trial court. Notably, at the hearing on November 13, 2019, Ellizzette told the court that three days prior, *i.e.*, November 10, 2019, her father had been declared "end of life" and that he "could die at any day now per the doctors." Ellizzette could have moved for a continuance at that time but did not. To the contrary, she informed the trial court at the November 13, 2019, hearing that she did not want to waste the court's time and that she would be present for the trial on November 18, 2019. She then waited until 3:49 a.m. on the day of trial to inform the court that she had changed her mind and wanted to have the trial postponed. Given these circumstances, the trial court could

reasonably conclude that Ellizzette did not show due diligence in waiting until the day of trial to file her motion for a continuance. Therefore, the trial court did not abuse its discretion in rejecting this basis for the motion.

¶ 65    Ellizzette also argues that the withdrawal of her attorneys before trial "placed her in a difficult position, which she sought to remedy by obtaining counsel who *** could have refuted the fundamentally flawed legal arguments Shawn presented." In addressing this issue, *Thomas v. Thomas*, 23 Ill. App. 3d 936 (1974), is instructive. In that case, the plaintiff's attorney moved to withdraw from the case, serving notice of his intention on July 5, 1973. The plaintiff appeared at a hearing on July 12, at which the trial court advised her that she should obtain counsel for the trial scheduled for July 17 but that she could file for a continuance if she felt that she would need more time. The plaintiff indicated that she would have counsel for trial, and no continuance was requested. On July 17, for the first time, the plaintiff moved for a continuance because she lacked counsel. The trial court denied the motion. In affirming, the reviewing court observed that the absence of counsel is one factor to consider in deciding a motion to continue but that "it does not entitle a party to a continuance as a matter of right." *Thomas*, 23 Ill. App. 3d at 940-41 (citing *Adcock v. Adcock*, 339 Ill. App. 543, 548 (1950)). The court determined that the lack of counsel "could have been avoided by [the plaintiff's] own diligence in either securing a lawyer for trial, or requesting a continuance prior to the day of trial." *Thomas*, 23 Ill. App. 3d at 940. The court further determined that the 12 days between when counsel served notice of his intent to withdraw and the date of the trial provided the plaintiff with "ample opportunity to extend the time for trial in order to obtain counsel." *Thomas*, 23 Ill. App. 3d at 940-41. Accordingly, the court concluded that the trial court properly exercised its judicial discretion in denying the motion for a continuance. *Thomas*, 23 Ill. App. 3d at 941.

¶ 66    In the present case, Ellizzette had substantially more time to request a continuance to obtain substitute counsel than the plaintiff had in *Thomas*. In this regard, we note that Ellizzette's counsel moved to withdraw on September 12, 2019. The motion indicates that Ellizzette was notified by both e-mail and certified mail to her last known addresses. The trial court entered an order on September 18, 2019, granting the motion to withdraw, providing Ellizzette with 21 days to find other counsel and file a substitute appearance, and confirming the scheduled trial date of November 18, 2019. Ellizzette was provided notice of the order granting the withdrawal by certified mail at the same addresses to which the motion to withdraw was sent. The record reflects that Ellizzette did not take any action until October 23, 2019, when she filed an appearance on her own behalf. Further, at no time between October 23 and November 18, 2019, did Ellizzette move the court to retain substitute counsel. In other words, Ellizzette had 68 days between when counsel served notice of their intent to withdraw and the date of the trial to secure substitute counsel or request a continuance. Yet, she did not take any action until the day of trial. Given these circumstances, the trial court could reasonably conclude that Ellizzette did not show due diligence in waiting until the day of trial to file her motion for a continuance. Therefore, the trial court did not abuse its discretion in rejecting this basis for the motion.

¶ 67    In short, there was sufficient time for Ellizzette to appear before the court to present a motion for a continuance prior to the date of the trial. Ellizzette, however, waited until the day of trial to move for a continuance. Under these circumstances, the trial court could have reasonably concluded that Ellizzette failed to show due diligence in pursuing her motion for a continuance. Accordingly, the trial court did not abuse its discretion in denying Ellizzette's motion for a continuance, filed on the day of trial.

¶ 68                              C. Judgment on the Pleadings

¶ 69    Next, Ellizzette argues that the trial court erred when it denied her motion for judgment on the pleadings. Section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2016)) provides that "[a]ny party may seasonably move for judgment on the pleadings." A motion for judgment on the pleadings is like a motion for summary judgment but is limited to the pleadings. *Perry v. Fidelity National Title Insurance Co.*, 2015 IL App (2d) 150168, ¶ 9. Thus, a judgment on the pleadings is proper only when the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005); *St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 25. In ruling on a motion for judgment on the pleadings, the court considers only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen*, 215 Ill. 2d at 385; *St. Paul Fire & Marine Insurance Co.*, 2017 IL App (2d) 160381, ¶ 25. A party moving for judgment on the pleadings concedes the truth of the well-pled facts in the nonmovant's pleadings. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 16. The court deciding the motion must take all reasonable inferences from those facts as true, disregard all conclusory allegations and surplusage, and construe the evidence strictly against the movant. *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 442 (2010). We review *de novo* a trial court's ruling on a motion for judgment on the pleadings. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 65.

¶ 70    Ellizzette contends that the facts apparent from the face of the pleadings and the judicial admissions of Shawn establish that she was entitled to judgment on the pleadings without the need for a trial. Specifically, Ellizzette asserts that, in her petition for letters of administration and affidavit of heirship, she pleaded that she is decedent's surviving spouse and his sole heir.

Ellizzette further asserts that Shawn failed to deny these allegations in his response to her pleadings and that, as a result, the allegations in her pleadings must be taken as true. See 735 ILCS 5/2-610(b) (West 2016) ("Every allegation *** not explicitly denied [in an answer] is admitted ***."). As additional support for her position, Ellizzette asserts that Shawn, in his verified petition for declaration of invalidity of marriage, admitted that she and decedent "participated in a marriage ceremony" on July 11, 2017, and that he attached thereto a copy of the certification of marriage. Ellizzette acknowledges that Shawn later filed a notice that he was voluntarily withdrawing his petition for declaration of invalidity of marriage but contends that Shawn remained bound thereby, because he did not allege that these "judicial admissions *** were the result [of] mistake or inadvertence." See *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 749 (1993). Ellizzette concludes that, because Shawn's response to her petition for letters of administration and affidavit of heirship "did not set up a defense that would entitle him to a merits hearing," the trial court erred when it denied her motion for judgment on the pleadings. We disagree.

¶ 71   As noted above, in ruling on a motion for judgment on the pleadings, the court considers the facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen*, 215 Ill. 2d at 385; *St. Paul Fire & Marine Insurance Co.*, 2017 IL App (2d) 160381, ¶ 25. Illinois courts recognize that documents containing readily verifiable facts from sources of indisputable accuracy may be judicially noticed. *People v. Davis*, 65 Ill. 2d 157, 165 (1976); *Centeno v. Illinois Workers' Compensation Comm'n*, 2020 IL App (2d) 180815WC, ¶ 39; *City of Centralia v. Garland*, 2019 IL App (5th) 180439, ¶ 10. Public documents that are included in the records of courts and administrative tribunals are subject to judicial notice. *People v. Ernest*, 141 Ill. 2d 412, 428 (1990); *Centeno*, 2020 IL App (2d) 180815WC, ¶ 39; *Palos Bank & Trust Co. v. Illinois Property Tax Appeal Board*, 2015 IL App (1st) 143324, ¶ 11 n.2;

*People v. Rubalcava*, 2013 IL App (2d) 120396, ¶ 31; *Curtis v. Lofy*, 394 Ill. App. 3d 170, 172 (2009); *NBD Highland Park Bank, N.A. v. Wien*, 251 Ill. App. 3d 512, 520-21 (1993); *In re McDonald*, 144 Ill. App. 3d 1082, 1085 (1986).

¶ 72    Ellizzette's position ignores that the trial court was entitled to take judicial notice of its own files and records. See *Palos Bank & Trust Co.*, 2015 IL App (1st) 143324, ¶ 11 n.2. Likewise, this court may take judicial notice of the trial court's file. *People v. Fields*, 2020 IL App (1st) 151735, ¶ 58; *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 726-27 (2009). In this case, the trial court's file demonstrates that in December 2017 Shawn filed a petition for letters of administration and affidavit of heirship. In the affidavit of heirship, Shawn stated as follows. He was appointed the plenary guardian of the person and estate of decedent on May 30, 2017. Decedent was survived by his parents and his three siblings. Decedent had been married "once and only once and then to Debbie Greene McDonald," with said marriage ending in divorce sometime prior to 2012. Although decedent "participated in a wedding ceremony with Ellizzette Duvall Minnicelli" on July 11, 2017, the marriage was void *ab initio* because decedent lacked the capacity to consent to the marriage. The trial court's file further demonstrates that on December 19, 2017, the trial court entered (1) an order appointing Shawn as the independent administrator of decedent's estate and (2) an order declaring heirship, which designated decedent's parents and his three siblings as his only heirs. The facts that decedent's parents and his three siblings were *named* as his only heirs and that Shawn was appointed as the independent administrator of decedent's estate were subject to judicial notice, as they were readily verifiable. See *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7 ("Public documents, such as those included in the records of other courts and administrative tribunals, fall within the category of 'readily verifiable' facts capable of instant and unquestionable demonstration of which a court may take judicial notice."); *Centeno*, 2020 IL App (2d)

180851WC, ¶ 39 (holding that the Illinois Workers' Compensation Commission properly considered arbitrator decision and transcript from another case, as such information was "readily verifiable and aided in the efficient disposition of the case"). Accordingly, considering the facts apparent from the face of the pleadings, matters subject to judicial notice, and any judicial admissions, the record shows that there remained a genuine issue of material fact as to Ellizzette's status as decedent's surviving spouse and sole heir. See *In re Estate of Davis*, 225 Ill. App. 3d at 1000 ("On a motion for judgment on the pleadings, if the pleadings put in issue one or more material facts, evidence must be taken to resolve such issues, and judgment may not be entered on the pleadings."). In light of the foregoing, we therefore conclude that the trial court did not err in denying Ellizzette's motion for judgment on the pleadings.

¶ 73                                    D. Dead Man's Act

¶ 74    Ellizzette next argues that the trial court committed reversible error in granting Shawn's motion *in limine*, which barred her from testifying, under the Dead Man's Act (735 ILCS 5/8-201 (West 2016)), as to her marriage and heirship.

¶ 75    As noted above, Shawn filed a motion *in limine* seeking to bar Ellizzette from testifying or presenting any evidence as to any marital relationship she allegedly had with decedent. Citing *Laurence*, 164 Ill. 367, *In re Estate of Diak*, 70 Ill. App. 2d 1, and *In re Estate of Enoch*, 52 Ill. App. 2d 39, Shawn alleged that such testimony would violate the Dead Man's Act (735 ILCS 5/8-201 (West 2016)). In her response to Shawn's motion, Ellizzette argued, *inter alia*, that the "plain text" of subsection (d) of the Dead Man's Act provides that "[n]o person shall be barred from testifying as to any fact relating to the heirship of a decedent." 735 ILCS 5/8-201(d) (West 2016). Ellizzette contended that, because her testimony would "relate to facts surrounding the heirship of [decedent], this testimony falls precisely within the exception carved out within the Dead Man's

Act itself." Therefore, Ellizzette urged the trial court to deny Shawn's motion. Following the parties' argument on the motion, the trial court granted Shawn's motion. The court reasoned that "Illinois law says that the spouse cannot testify as to heirship, and there's cases cited, and they weren't responded to." Thereafter, the trial court entered a written order in accordance with its oral finding, barring Ellizzette from "testifying regarding her putative marriage to the decedent or regarding the decedent's heirship."

¶ 76    On appeal, Ellizzette, relying principally on *In re Estate of Bailey*, 97 Ill. App. 3d 781 (1981), argues that the legislature expressly enacted subsection (d) of the Dead Man's Act (735 ILCS 5/8-201(d) (West 2016)) to overrule the authority Shawn cited in his motion *in limine*. She therefore contends that the trial court committed reversible error in barring her from testifying about her marriage and heirship. Shawn responds that the trial court's decision to grant his motion *in limine* was proper because it relied on Illinois Supreme Court precedent, *Laurence*, 164 Ill. 367, which he claims remains good law and prohibits a spouse from testifying in an heirship proceeding. Further, Shawn maintains that, even if it was improper for the trial court to bar Ellizzette from testifying, she failed to preserve the issue for review by making an offer of proof as to her testimony. We review evidentiary rulings for an abuse of discretion but interpretations of statutes *de novo*. See *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005). Additionally, a trial court's ruling on an issue involving the Dead Man's Act will not be reversed unless the error was substantially prejudicial and affected the outcome of the trial. *People v. $5,608 United States Currency*, 359 Ill. App. 3d 891, 895 (2005).

¶ 77    We begin our analysis with a review of *Laurence*, 164 Ill. 367. In that case, the decedent died intestate. The plaintiff, the decedent's putative wife, petitioned the court for half of the decedent's estate. The trial court allowed the plaintiff to testify at trial as to her alleged marriage

to the decedent. After considering the evidence presented at the trial, the court concluded that the plaintiff was the lawful widow of the decedent and was therefore entitled to share in his estate. On appeal, the defendants argued that the trial court erred in permitting the plaintiff to testify on her own behalf. In support of their position, the defendants relied on section 2 of the Evidence and Depositions Act (Ill. Ann. Stat., ch. 51, ¶ 2 (Starr & Curtis 1896)), commonly referred to as the Dead Man's Act (see Adrienne D. Whitehead, *New Life to the Dead Man's Act in Illinois*, 5 Loy. U. Chi. L.J. 428 (1974)). At the time of the *Laurence* decision, the statute provided:

> " '[N]o party to any civil action, suit or proceeding, or person directly interested in the event thereof, should be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the *** heir *** of any deceased person, *** unless when called as a witness by such adverse party so suing or defending.' " *Laurence*, 164 Ill. at 372 (quoting Ill. Ann. Stat., ch. 51, ¶ 2 (Starr & Curtis 1896)).

The supreme court reversed and remanded the matter, holding that the plaintiff's testimony should have been excluded. *Laurence*, 164 Ill. at 373. The court explained that the plaintiff "was not an heir until she established the marriage which she alleged and which was denied by the heirs, and until such marriage was established by proof or conceded she was a stranger to the estate and incompetent to testify, and the court erred in permitting her to do so." *Laurence*, 164 Ill. at 373.

¶ 78    In 1973, the Dead Man's Act as it then existed was repealed and replaced. *In re Estate of Babcock*, 105 Ill. 2d 267, 272 (1985); Whitehead, *supra*, at 428. In its current form, the Dead Man's Act reads in pertinent part as follows:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly

interested in the action shall be allowed to testify on his or her own behalf to any

conversation with the deceased or person under legal disability or to any event which took

place in the presence of the deceased or person under legal disability, except in the

following instances:

* * *

(d) No person shall be barred from testifying as to any fact relating to the heirship

of a decedent." 735 ILCS 5/8-201 (West 2016).

As the *Babcock* court noted, the successor version of the Dead Man's Act is less restrictive than

the prior version of the statute. *In re Estate of Babcock*, 105 Ill. 2d at 272. The *Babcock* court

explained:

"The successor act *** no longer bars all testimony by interested persons. Unlike

the previous statute, the Act now disqualifies the testimony by interested persons only to

the extent that the testimony would be to a 'conversation with the deceased [or person

under legal disability]' or an 'event which took place in the presence of the deceased [or

person with a legal disability].' " *In re Estate of Babcock*, 105 Ill. 2d at 273 (quoting Ill.

Rev. Stat. 1981, ch. 110, ¶ 8-201).

We also observe that the successor statute provides several exceptions to its applicability,

including subsection (d) (735 ILCS 5/8-201(d) (West 2016)), which is at issue in this case.

¶ 79    In *In re Estate of Bailey*, 97 Ill. App. 3d 781, the court had an opportunity to consider the

effect of subsection (d). In that case, the petitioner, the putative wife of the decedent, brought an

action to vacate the respondent's appointment as the administrator of the decedent's estate. At the

trial on the matter, the respondent objected to the petitioner testifying about her marriage to the

decedent. The respondent asserted that such testimony was barred by the Dead Man's Act since

the petitioner's testimony was adverse to the admitted heirs. The trial court sustained the objection, ruling that heirship must be proved by disinterested witnesses. On appeal, the petitioner argued that the trial court erred in barring her testimony. The reviewing court agreed. *In re Estate of Bailey*, 97 Ill. App. 3d at 783-84. In so holding, the court stated that the enactment by the legislature of subsection (d) in 1973 was "intended to change the rule of *Laurence*," which the court termed "harsh." *In re Estate of Bailey*, 97 Ill. App. 3d at 783-84. The court elaborated:

"The language of the amendment is reasonably clear, and no other purpose can be discerned in enacting the amendment. Respondent's interpretation would read the general rule, that interested parties may not testify as to transactions which took place in the presence of decedent, into the exception contained in [subsection (d)]. Such an interpretation would render [subsection (d)] a nullity." *In re Estate of Bailey*, 97 Ill. App. 3d at 784.

¶ 80 Further, the *Bailey* court "question[ed] whether a proceeding to establish the proper administrator of an estate is within the scope of the [Dead Man's] Act." *In re Estate of Bailey*, 97 Ill. App. 3d at 784. The court explained:

"Such a proceeding does not directly reduce or impair the decedent's estate. Application of the testimonial bar of the [Dead Man's] Act to situations such as this leads to a race to the court house to be appointed or nominate an administrator. Once the appointment is made, any party wrongfully omitted from the selection must shoulder the onerous burden of proving heirship without the benefit of his own testimony." *In re Estate of Bailey*, 97 Ill. App. 3d at 784.

As such, the reviewing court held that the petitioner should have been allowed to testify as to her marriage to the decedent. *In re Estate of Bailey*, 97 Ill. App. 3d at 783-84.

¶ 81    Three years after *Bailey* was decided, the court in *In re Estate of Hutchins*, 120 Ill. App. 3d 1084 (1984), also had occasion to consider the effect of subsection (d). At issue in *Hutchins* was whether certain purported heirs of the decedent were competent under the Dead Man's Act to testify to their heirship of the decedent. The plaintiff argued that the trial court erred in allowing testimony from the purported illegitimate children of the decedent on the issue of the heirship of the decedent. Citing *Laurence*, the plaintiff asserted that, under the Dead Man's Act, an heir is competent to testify in a proceeding to establish the heirship of his or her ancestor only where the proceedings are not contested and the establishment of the heirship is routine. The reviewing court disagreed. *In re Estate of Hutchins*, 120 Ill. App. 3d at 1086. Relying on the reasoning in *Bailey*, the court held that the trial court properly admitted the purported heirs' testimony on the issue of the heirship of the decedent, pursuant to subsection (d) of the Dead Man's Act. *In re Estate of Hutchins*, 120 Ill. App. 3d at 1087.

¶ 82    Turning to the facts in this case, we agree with the rationale set forth in *Bailey* and hold that the trial court abused its discretion in granting Shawn's motion *in limine*, which sought to bar Ellizzette from testifying or presenting any evidence as to any marital relationship she had with decedent. Quite simply, pursuant to the plain language of subsection (d) (735 ILCS 5/8-201(d) (West 2016)), the Dead Man's Act no longer prohibits interested parties from testifying "as to any fact relating to the heirship of a decedent." See *Spencer v. Strenger Wayne*, 2017 IL App (2d) 160801, ¶ 16 (noting that the fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature, the best indicator of which is the plain language of the statute itself). Thus, the trial court should have permitted Ellizzette to testify as to her marriage to decedent, as it directly relates to heirship. In so holding, we observe that the court's rationale for its finding, *i.e.*, that Ellizzette did not respond to the authority cited by Shawn, is not supported by

the record. While it is true that Ellizzette did not cite any case law in her response to the motion *in limine* or at the hearing on the same, she clearly referenced subsection (d) in her response and asserted that the statute allowed her to testify as to her relationship with decedent. However, the trial court never addressed the impact of subsection (d) in ruling on Shawn's motion *in limine*.

¶ 83    Additionally, we reject Shawn's claim that *Laurence*, 164 Ill. 367, remains good law. Shawn claims that *Laurence* is still valid precedent because the Illinois Supreme Court "never overruled or modified [the] decision *** in the twelve plus decades following its opinion." Shawn's position completely ignores the fact that the legislature altered the version of the Dead Man's Act interpreted in *Laurence* to provide that "[n]o person shall be barred from testifying as to any fact relating to the heirship of a decedent." 735 ILCS 5/8-201(d) (West 2016). This action by the legislature effectively overruled the holdings in *Laurence* and its progeny. *In re Estate of Bailey*, 97 Ill. App. 3d at 784 ("[W]e believe that by enacting [subsection (d)] the legislature intended to change the rule of *Laurence* which applied the [Dead Man's] Act to proceedings to establish heirship."); see also *In re Estate of Hutchins*, 120 Ill. App. 3d at 1087 (agreeing with the *Bailey* court that the language of subsection (d) was clearly intended by the legislature to change the holding in *Laurence*); Whitehead, *supra*, at 437 (opining that the addition of subsection (d) "will undoubtedly be a boon to [putative spouses] who invariably failed under the old statute to establish heirship" and referring to *Laurence*). When the legislature changes the law in response to a ruling by the supreme court, that precedent is overruled when the statute is enacted. See *Roth v. Yackley*, 77 Ill. 2d 423, 429 (1979) (recognizing that the General Assembly has the authority to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent). This is exactly what occurred here. Shawn does not even discuss subsection (d) in his brief.

¶ 84   Shawn also maintains that Ellizzette forfeited this issue by failing to make an offer of proof. "An offer of proof informs the trial court, opposing counsel, and the reviewing court of the nature and substance of the evidence sought to be introduced." *Colella v. JMS Trucking Co. of Illinois*, 403 Ill. App. 3d 82, 93 (2010). "When a motion *in limine* is granted, the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court." *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003). "However, an offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002); see also *LaSalle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 823-24 (2008).

¶ 85   Here, Shawn's motion *in limine* specifically stated that he "expected that *** Ellizzette *** will attempt to testify that she is the surviving spouse of [decedent]." More significantly, the trial court, in ruling on the motion, stated, "to the extent that the spouse is going to testify as to the purported marriage *** I would have to grant the motion *in limine* based on the law that [Ellizzette] can't testify." The court later told Ellizzette:

"[H]aving ruled as to your ability to testify, that makes it difficult for you to prove the validity of the marriage. The marriage may have happened. It may have been valid in your eyes, but we're proceeding under statutes, law, cases, precedent, and rulings on those laws as applied to the facts. So I'm not saying you didn't have a ceremony, but I may—that may be the effect as it pertains to heirship. It depends what you are able to prove without testifying."

Given this record, we conclude that an offer of proof was not required because the trial court understood that Ellizzette would testify as to her purported marriage to decedent. See *Dillon*, 199 Ill. 2d at 495 (holding that an offer of proof was not required because the trial court understood

that the witness would testify as to the medical standard of care); *LaSalle Bank, N.A.*, 384 Ill. App. 3d at 824 (holding that an offer of proof was not required because the trial court knew both the identity of the proposed witness and the subject matter of his proposed testimony); *First National Bank of Mount Prospect v. Village of Mount Prospect*, 197 Ill. App. 3d 855, 864-65 (1990) (holding that an offer of proof was not necessary where expert's opinion testimony was obvious).

¶ 86    In short, based upon the 1973 amendment to the Dead Man's Act, we are compelled to conclude that the trial court abused its discretion in granting Shawn's motion *in limine* and barring Ellizzette from testifying or presenting any evidence as to any marital relationship she had with decedent. As the trial court's erroneous ruling precluded Ellizzette from presenting her case-in-chief, it substantially prejudiced her. See *$5,608 United States Currency*, 359 Ill. App. 3d at 896. Accordingly, we reverse the trial court's decision to grant a directed finding in Shawn's favor on this basis, and we remand the matter for a new trial. However, because additional issues related to the reasons the trial court cited in support of its grant of a directed finding in Shawn's favor might arise on remand, we address those issues now.

¶ 87                                   E. Directed Finding

¶ 88    Ellizzette challenges the grounds the trial court cited in support of its decision to direct a finding in Shawn's favor at the close of her case-in-chief. Section 2-1110 of the Code (735 ILCS 5/2-1110 (West 2016)) permits a defendant to move for a directed finding at the close of the plaintiff's case in a bench trial. In ruling on such a motion, the trial court engages in a two-step analysis. *Minch v. George*, 395 Ill. App. 3d 390, 398 (2009). Initially, the court must determine whether the plaintiff presented a *prima facie* case as a matter of law. *Edward Atkins, M.D., S.C. v. Robbins, Salomon & Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 53. If the court finds that the plaintiff presented a *prima facie* case, it proceeds to the second step and weighs the evidence to determine

whether the *prima facie* case survives. *Minch*, 395 Ill. App. 3d at 398. Where, as here, the trial court did not proceed beyond the first stage, we review *de novo* its determination. *In re Petition to Disconnect Certain Territory Commonly Known as Foxfield Subdivision (In re Foxfield Subdivision)*, 396 Ill. App. 3d 989, 992 (2009).

¶ 89     To establish a *prima facie* case, a plaintiff must proffer at least some evidence on every essential element of the cause of action. *In re Foxfield Subdivision*, 396 Ill. App. 3d at 992. To legally marry in Illinois, a couple must fulfill the requirements and formalities set out in the Marriage Act (750 ILCS 5/101 *et seq.* (West 2016)). Section 201 of the Marriage Act (750 ILCS 5/201 (West 2016)) provides that "[a] marriage between 2 persons licensed, solemnized and registered as provided in this Act is valid in this State." Thus, the parties must apply for a marriage license from the county clerk's office of the county in which they intend to marry. 750 ILCS 5/202, 203, 207 (West 2016); *In re Estate of Crockett*, 312 Ill. App. 3d 1167, 1171 (2000). Both parties must be present before the county clerk or one of his deputies, pay the required fee, and sign the license application. 750 ILCS 5/203 (West 2016); *In re Estate of Crockett*, 312 Ill. App. 3d at 1171. The parties must then appear before a duly authorized officiant and, after consenting to marry, must file the marriage certificate with the county clerk's office within 10 days of the ceremony. 750 ILCS 5/209 (West 2016); *In re Estate of Crockett*, 312 Ill. App. 3d at 1171. We observe, however, that Illinois courts have conferred "spouse" status upon individuals even when one of the directory requirements of the Marriage Act has not been satisfied. See, *e.g.*, *Haderaski v. Haderaski*, 415 Ill. 118, 119-22 (1953) (concluding that the lack of a license in an otherwise lawful marriage did not invalidate the marriage, as the statute requiring a license was directory rather than mandatory); *In re Estate of Bailey*, 97 Ill. App. 3d at 786 (noting that, with the exception of the lack of a marriage license, the evidence established that the couple was legally married).

¶ 90    In this case, the trial court ruled that Ellizzette did not present a *prima facie* case of a valid marriage as a matter of law. The court ruled that, to present a *prima facie* case on the validity of her marriage to decedent, Ellizzette had to present a valid application for a marriage license and a ceremony performed in Edgar County witnessed by two individuals. The court found, as a matter of law, that Ellizzette "did not present a *prima facie* case of a valid marriage ceremony under the circumstances such as would be sufficient to meet her burden of proof on all of the elements." The court stated that "[i]t would have been simple to present the evidence of a marriage license and certificate and application and have some witness testify about that, but that was not done." In ruling, the court further stated:

> "And while it is not as clear as [Shawn's counsel] presents as to the case law precedents—and in that I'm referring to the arguments that [Ellizzette] had when she was represented by counsel during motion practice on a motion for judgment on the pleadings— it is clear that there was an order finding and adjudicating Decedent as a disabled person and in immediate need of a plenary guardianship and that there was no best-interest hearing held; that the punitive [*sic*] marriage was not known to the Administrator until November 2017; and that the marriage was not properly witnessed or licensed or subject to a best-interest determination by the probate court."

Thus, in concluding that Ellizzette did not establish a *prima facie* case of a valid marriage, the trial court determined that there was no evidence that the purported marriage was properly licensed, there was no evidence of a valid marriage ceremony in Edgar County, there was no evidence of two witnesses to the marriage, and there was no best-interest hearing to determine decedent's competency to marry. Applying *de novo* review, we conclude that the trial court erred in granting Shawn's motion for a directed finding on the four grounds cited in its ruling.

¶ 91                                    1. License

¶ 92    First, the trial court erred in ruling that there was no evidence that the purported marriage was properly licensed. As noted above, in ruling that Ellizzette failed to present a *prima facie* case of a valid marriage, the trial court stated, "[i]t would have been simple to present the evidence of a marriage license and certificate and application and have some witness testify about that, but that was not done." But this finding by the trial court ignores the fact that on November 30, 2018, almost a year before the trial, the court granted Shawn's motion requesting that it take judicial notice of these very documents. The purpose of judicial notice is to dispense with the normal method of producing evidence. See *State Farm Mutual Automobile Insurance Co. v. Grebner*, 132 Ill. App. 2d 234, 237 (1971); see also Black's Law Dictionary (11th ed. 2019) (defining "judicial notice" as "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact"); *City of Centralia*, 2019 IL App (5th) 180439, ¶ 10 (noting that a court may take judicial notice of "matters that are readily verifiable from sources of indisputable accuracy, such as public records"). "The theory and effective application of judicial notice of adjudicative facts not only renders the formal introduction of evidence before the trier of fact unnecessary, *Secrist v. Petty*, 109 Ill. 188 (1883); *People v. One 1999 Lexus*, 367 Ill. App. 3d 687, *** but also precludes the introduction of evidence of contrary tenor ***." Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 202.3 (9th ed. 2009). Hence, by order of the court, evidence of a marriage application, license, and certificate were before the court pursuant to its ruling on Shawn's motion. Since the court had already taken judicial notice of these documents for purposes of the trial, there was no need for Ellizzette to reintroduce them.

¶ 93    Shawn argues that the purpose behind his motion was "to highlight every falsehood [Ellizzette] promoted on the Edgar County Clerk, as well as [decedent], a disabled person in need

of protection from neglect, exploitation and abuse." However, this purpose is not set forth in his motion or in the record. In this regard, we observe that the body of Shawn's motion consisted of one page. In the motion, Shawn simply asked the trial court to take judicial notice, "[p]ursuant to the terms of *** trial," of the "Certified Copy of Edgar County, Illinois[,] Marriage Application and Record of John Wood McDonald, III and Ellizzette Duvall Minicelli [*sic*]." Attached to the motion were certified copies of (1) a "Marriage Application and Record" of "John Wood McDonald III" and "Ellizzette Duvall Minnicelli," (2) a Marriage License of "John Wood McDonald III" and "Ellizzette Duvall Minnicelli" issued by the Edgar County Clerk, signed by Bement as the officiant, and indicating that the marriage ceremony occurred in Paris, Illinois on July 11, 2017, and (3) a "Certification of Marriage" of "John Wood McDonald, III" and "Ellizzette Duvall Minnicelli." No court reporter was present for the argument on this motion, and no basis for or limitations on the trial court's order appears in the record. The order granting Shawn's motion simply states that "The Motion for Judicial Notice is granted and the Court hereby takes judicial notice of the exhibits attached thereto." Since there was no limitation on the purpose for which the exhibits were admitted at trial, we find that Shawn's position lacks merit.

¶ 94                                   2. Ceremony

¶ 95     Second, the trial court erred when it ruled that Ellizzette did not present some evidence of "a ceremony performed in Edgar County." Bement testified that he performed a marriage ceremony between Ellizzette and decedent on July 11, 2017, in the parties' home in Paris, Edgar County, Illinois. The "Certification of Marriage" issued by the clerk of Edgar County, of which the trial court took judicial notice, lists the wedding ceremony as taking place on July 11, 2017, in Paris, Illinois, with Bement as the officiant. In addition, we may take judicial notice that Paris is the county seat of Edgar County (see *About*, Edgar County, https://edgarcountyillinois.com/about/

(last visited Jan 25, 2021) [https://perma.cc/JB2C-9YQ4]). See *People v. Mata*, 217 Ill. 2d 535, 539-40 (2005) (noting that a reviewing court can take judicial notice "of matters that are readily verifiable from sources of indisputable accuracy"); *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 20 (taking judicial notice of the population of a county); *People v. Clark*, 406 Ill. App. 3d 622, 632 (2010) (taking judicial notice of park's location). Indeed, Shawn's counsel admitted in arguing the motion for a directed finding that a marriage ceremony was performed, stating, "there's no evidence that there is a valid marriage *other than what Mr. Bement said, and Mr. Bement said he conducted a ceremony*." The trial court's ruling that Ellizzette failed to present some evidence of a ceremony performed in Edgar County is simply not supported by the record.

¶ 96                                     3. Witnesses

¶ 97     Third, the trial court erred when it ruled that Ellizzette did not present a *prima facie* case, because she failed to introduce evidence of two witnesses to the marriage ceremony. Neither Shawn nor the trial court cited any statutory provision requiring the presence of two witnesses for a marriage to be valid in Illinois. Indeed, our research reveals that, while many states have a witness requirement, Illinois is not one of them. See, *e.g.*, Alaska Stat. Ann. § 25.05.301 (West 2016) ("In the solemnization of marriage no particular form is required except that the parties shall assent or declare in the presence of each other and the person solemnizing the marriage and in the presence of at least two competent witnesses that they take each other to be husband and wife."); Cal. Family Code § 359(d) (West 2016) ("The person solemnizing the marriage shall complete the solemnization sections on the marriage license, and shall cause to be entered on the marriage license the printed name, signature, and mailing address of at least one, and no more than two, witnesses to the marriage ceremony."); Del. Code Ann. tit. 13, § 106(a)(4) (West 2016) ("Marriages shall be solemnized in the presence of at least 2 reputable witnesses who are at least

18 years of age and who shall sign the certificate of marriage ***."); La. Stat. Ann. § 9:244 (2016) (requiring marriage ceremony to be "performed in the presence of two competent witnesses of full age"); Kan. Stat. Ann. § 23-2504(a) (West 2016) (providing that a marriage may be validly solemnized "[b]y the mutual declarations of the two parties to be joined in marriage, made before an authorized officiating person and in the presence of at least two competent witnesses over 18 years of age, other than the officiating person, that they take each other as husband and wife"); Mich. Comp. Laws Ann. § 551.9 (West 2016) ("In the solemnization of marriage *** there shall be at least 2 witnesses, besides the person solemnizing the marriage, present at the ceremony."); Minn. Stat. Ann. § 517.09 (West 2016) ("No particular form is required to solemnize a civil marriage, except: the parties shall declare in the presence of a person authorized to solemnize civil marriages and two attending witnesses that each takes the other as husband, wife, or spouse ***."); Neb. Rev. Stat. Ann. § 42-109 (West 2016) (requiring "at least two witnesses, besides the minister or magistrate" to be present at the ceremony where the marriage is solemnized); Nev. Rev. Stat. Ann. § 122.110 (West 2016) ("In every case, there shall be at least one witness present besides the person performing the [marriage] ceremony."); N.Y. Dom. Rel. Law § 12 (McKinney 2016) (requiring "at least one witness beside the clergyman or magistrate" to be present at the ceremony where the marriage is solemnized); N.D. Cent. Code Ann. § 14-03-20 (West 2016) ("Every certificate of marriage must contain the full name of each party before and after the marriage and be signed by two witnesses to the marriage in addition to the signature of the person who solemnized the marriage."); Okla. Stat. Ann. tit. 43, § 7 (West 2016) ("All marriages must be contracted by a formal ceremony performed or solemnized in the presence of at least two adult, competent persons as witnesses ***."); 15 R.I. Gen. Laws Ann. § 15-3-8 (West 2016) ("The solemnization of marriage shall be in the presence of at least two (2) witnesses besides the minister,

elder, justice, or warden officiating."); Wis. Stat. Ann. § 765.16 (West 2016) ("Marriage may be validly solemnized and contracted in this state only after a marriage license has been issued therefor, and only by the mutual declarations of the 2 parties to be joined in marriage that they take each other as husband and wife, made before an authorized officiating person and in the presence of at least 2 competent adult witnesses other than the officiating person."); Wyo. Stat. Ann. § 20-1-106(b) (West 2016) ("In the solemnization of marriage no particular form is required, except that the parties shall solemnly declare in the presence of the person performing the ceremony and at least two (2) attending witnesses that they take each other as husband and wife.").

¶ 98    Nevertheless, citing *Pike v. Pike*, 112 Ill. App. 243 (1904), Shawn insists that "[p]roviding the names of two witnesses is the public policy in Illinois." At the outset, we note that *Pike* is not controlling, as it was decided in 1904 and appellate decisions filed prior to 1935 have no binding authority. See *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 32 n.4 (noting that appellate court decisions filed prior to 1935 have no binding authority and can be considered only persuasive). This technicality aside, we find *Pike* factually inapposite. *Pike* involved a common-law, "secret" marriage that was neither witnessed by anyone nor publicly acknowledged by the participants. At the time of the events in *Pike*, common-law marriages were recognized in Illinois. *Pike*, 112 Ill. App. at 260. However, one of the parties denied that he had married. *Pike*, 112 Ill. App. at 252. Under these circumstances, the reviewing court "regretted that a marriage, such as is claimed in this case, contracted secretly between the parties, no third person being present, is legally permissible." *Pike*, 112 Ill. App. at 260. The present case does not involve the type of marriage at issue in *Pike*. Indeed, common-law marriages were eliminated by statute in Illinois in 1905. 750 ILCS 5/214 (West 2016); *Hewitt v. Hewitt*, 77 Ill. 2d 49, 62 (1979). *Pike* is simply not

persuasive authority for the proposition that a valid marriage under Illinois law requires the presence of two witnesses at the ceremony.

¶ 99   Shawn notes that one of the forms issued by the Edgar County clerk includes a space to provide the names of witnesses to a marriage. Shawn therefore insists that, if the two-witness requirement did not remain the policy in Illinois, "the Edgar County Clerk's instruction to marriage applicants to provide the names of such witnesses would be meaningless." We find no such instruction in the documents submitted. And while the document referenced by Shawn does contain lines where the names of witnesses may be provided, there is no indication that this is a requirement to obtain a valid marriage license. Indeed, even though no witnesses are listed, the Edgar County clerk issued a marriage license to decedent and "Ellizzette Duvall Minnicelli," thereby suggesting that witnesses are *not* required under Illinois law. Given the lack of authority substantiating a two-witness requirement for marriages in Illinois, the trial court erred when it ruled that Ellizzette was required to present some evidence that there were two witnesses to her officiated marriage to decedent.

¶ 100                    4. Best-Interest Hearing

¶ 101   Fourth, the trial court indicated that, pursuant to the Probate Act, a best-interest hearing was required before decedent could marry. Although not directly cited in the trial court's ruling, this was apparently a reference to section 11a-17(a-10) of the Probate Act (755 ILCS 5/11a-17(a-10) (West 2016)), which states in pertinent part as follows:

> "Upon petition by the guardian of the ward's person or estate, the court may authorize and
> direct a guardian of the ward's person or estate to consent, on behalf of the ward, to the
> ward's marriage pursuant to Part II of the Illinois Marriage and Dissolution of Marriage

> Act if the court finds by clear and convincing evidence that the marriage is in the ward's
>
> best interests."

The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. The most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *State Bank of Cherry*, 2013 IL 113836, ¶ 56. Moreover, a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *State Bank of Cherry*, 2013 IL 113836, ¶ 56.

¶ 102 The plain language of this provision simply does not require prior approval by the court before a ward can marry of his or her own accord. Instead, it provides a procedure to allow a guardian to petition the court for authorization to consent, on behalf of the ward, to the ward's marriage. The fact that a guardian may seek from the court an order authorizing consent, however, does not mean that the ward may not marry unless and until the guardian first obtains the court's consent. We read nothing in the language of section 11a-17(a-10) of the Probate Act that expressly declares that a marriage entered into by a ward is void in the absence of a best-interest hearing.

¶ 103 Indeed, this is consistent with *Pape*, 145 Ill. 2d 13, in which the supreme court held that the appointment under the Probate Act of a guardian of a person is not sufficient, in and of itself, to show that the person was incompetent to consent to marriage. In reaching this result the court explained:

> "In this regard, we note that section 11a-3 of the Probate Act of 1975 provides, *inter alia*,
>
> that a court may adjudge a person disabled[ ] and may appoint a guardian of his person if,

because of his disability, he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person. In contrast, section 301 of the Marriage Act provides that a declaration of invalidity of a marriage may be obtained where a party, *inter alia*, lacked the capacity to consent to the marriage because of, *inter alia*, mental incapacity or infirmity. (Ill. Rev. Stat. 1989, ch. 40, par. 301.) Moreover, a person lacks capacity to consent to a marriage where he is unable to understand the nature, effect, duties and obligations of marriage." *Pape*, 145 Ill. 2d at 21-22.

Based on the foregoing, the court concluded that the test of incapacity under the above-referenced provisions of the Probate Act and the Marriage Act "is limited and does not speak to the incapacity required for purposes of the other provision." *Pape*, 145 Ill. 2d at 22. In this case, decedent was adjudged a ward of the court pursuant to section 11a-3 of the Probate Act (755 ILCS 5/11a-3 (West 2016)). Pursuant to *Pape*, however, this fact is insufficient, in and of itself, to require a best-interest hearing prior to decedent marrying. As such, we conclude that the trial court erred in ruling that the lack of a best-interest hearing provided a basis to grant Shawn's motion for a directed finding at the close of Ellizzette's case.

¶ 104   Shawn suggests that, to the extent that *Pape* constituted persuasive authority, it no longer does because the legislature added the language in section 11a-17(a-10) to the Probate Act *after* the supreme court decided *Pape*. We disagree. Shawn's argument overlooks the plain language of section 11a-17(a-10), which does not prohibit a ward from marrying on his or her own accord in the absence of a best-interest hearing. Moreover, nothing in section 11a-17(a-10) expressly declares a marriage entered into by a ward, without his or her guardian's consent or a best-interest hearing, to be a nullity. Shawn also maintains that such a holding ignores a recent case decided by the supreme court, *Karbin v. Karbin*, 2012 IL 112815. In *Karbin*, the supreme court held that a

guardian has standing to institute marital dissolution proceedings on behalf of a ward. *Karbin*, 2012 IL 112815, ¶ 52. We read nothing in *Karbin* that prohibits a ward from getting married in the absence of a best-interest hearing. Accordingly, we find Shawn's reliance on *Karbin* misplaced.

¶ 105                                III. CONCLUSION

¶ 106   For the foregoing reasons, we affirm the trial court's rulings denying Ellizzette's motion to vacate the order appointing Shawn as the administrator of decedent's estate and the order of heirship. We also affirm the trial court's decision to deny Ellizzette's motion for a continuance of trial and her motion for judgment on the pleadings. We find, however, that the trial court erred in barring Ellizzette from testifying regarding her marriage and heirship. Further, the trial court erred in granting Shawn's motion for a directed finding on the four grounds set forth in its oral ruling. The judgment of the circuit court of Kane County is therefore affirmed in part and reversed in part. We remand for further proceedings consistent with this disposition.

¶ 107   Affirmed in part and reversed in part.

¶ 108   Cause remanded with directions.

**No. 2-19-1113**

| | |
|---|---|
| **Cite as:** | *In re Estate of McDonald*, 2021 IL App (2d) 191113 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 17-P-744; the Hon. James R. Murphy, Judge, presiding. |
| **Attorneys for Appellant:** | Steven J. Roeder and Thomas D. Gipson, of Roeder Law Offices LLC, of Chicago, and Robert G. Black, Law Offices of Robert G. Black, P.C., of Naperville, for appellant. |
| **Attorneys for Appellee:** | Patrick M. Kinnally and Christopher J. Warmbold, of Kinnally Flaherty Krentz Loran Hodge & Masur PC, of Aurora, for appellee. |